BEE JAY'S TRUCK STOP, INC., Plaintiff-Appellant, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellee.—(BRIDGEVIEW BANK AND TRUST COMPANY, Plaintiff-Appellant.)

First District (3rd Division) No. 78-914

Opinion filed June 18, 1980.

Michael G. Cheronis, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Donald B. Mackay, Melbourne A. Noel, Jr., and Michael B. Weinstein, Assistant Attorneys General, of counsel), for appellee.

Miss PRESIDING JUSTICE McGILLICUDDY delivered the opinion of the court:

This is an appeal by the garnishee, Bridgeview Bank and Trust Company (bank), from a judgment for $35,841.39 recovered by the Illinois Department of Revenue (State), the appellee. The State, as judgment creditor, sought to garnish the account of Bee Jay's Truck Stop, Inc. (Bee Jay's), the judgment debtor, held by the bank. The Department of Revenue previously had obtained a judgment in the amount of $842,495.73, inclusive of interest, against Bee Jay's. Three garnishment summonses were served upon the bank, and on the last two occasions the bank sought to invoke its statutory right of set-off for loans it had made to Bee-Jay's. The State brought an action against the garnishee alleging the bank forfeited its right of set-off by conduct designed to frustrate the objective of the garnishment proceedings. The trial court agreed and rendered judgment in favor of the State against the bank.

On appeal the bank argues that the judgment should be reversed because the trial court relied upon a factually inappropriate case (*Burke ex rel. Birney v. Congress Hotel Co.* (1935), 280 Ill. App. 493) and because an insufficient factual basis existed for the court to conclude that the bank employed the statutory offset provision to frustrate the garnishment proceedings.

The State commenced garnishment proceedings on March 25, 1977. The interrogatories in the affidavit for nonwage garnishment were completed by Robert Altepeter, president of the bank, on March 31, 1977, and pursuant to a conditional judgment the bank turned over to the State $63,129.74 from Bee Jay's checking account. In April 1977, $65,858 was deposited in Bee Jay's checking account, the proceeds of a loan evidenced by a promissory note. Whether the maker of the note was Bee Jay's Truck Stop, Inc., or Nick James Massarella, the corporation's vice-president, is disputed. As security for the loan, Massarella hypothecated to the bank his beneficial interest in a land trust having a net value of $100,000. On May 28, 1977, upon receipt of the second garnishment summons and interrogatories, the bank's president completed the affidavit and denied holding any funds belonging to Bee Jay's. The bank did not disclose that it had offset funds in Bee Jay's checking account in the amount of $38,089.77 against the April loan which had an outstanding balance of $65,858.

The promissory note became due on October 1, 1977, and was paid off with a 90-day renewal note secured by the same collateral. This latter note, in the amount of $27,171.13, was executed by Benjamin Massarella, as president, and Nick Massarella, as vice-president of Bee Jay's Truck Stop, Inc., and specifically provided that the proceeds would be used solely for business purposes. Thereafter, a third garnishment summons

was served on the bank and the interrogatories to garnishee were completed by Robert Altepeter on October 31, 1977, as follows:

"1. When you were served with summons did you have in your possession, custody or control any property, other than cash monies, time or demand deposits, belonging to the judgment debtor or in which he had an interest?

Answer___Yes_____

(yes or no)

2. If your answer to number 1 above is yes, describe the property:

Checking $8,543.14_____

3. When you were served with the summons were you otherwise indebted to him by cash monies, time or demand deposits, no matter when payable, except for wages?

Answer___No_____  ”

(yes or no).

The State contested this answer[1] and moved for a conditional judgment against the bank for $35,739.27. A hearing was held on January 4, 1978, and the bank was granted leave to amend its answers to the third interrogatories to indicate that at the time of service of the garnishment summons, the bank was indebted to Bee Jay's in the amount of $35,739.27 held in a checking account and due on demand. The bank further indicated a deduction by offsetting the amount of money outstanding on the renewal note, $27,171.13, and stated the net amount subject to the garnishment was $8,543.14.

At the January 4th hearing the State produced one witness, Robert Altepeter, the garnishee's president. Altepeter admitted that, with the exception of the October renewal note, all the bank's documents regarding the two loans referred to Nick James Massarella as the maker or debtor. These documents, which were entered into evidence, included the bank's ledger card for its maturity tickler file, the bank's ledger card reflecting Nick Massarella's total indebtedness on miscellaneous dates when transactions occurred, and the papers filed by the bank to perfect its security interest in the assignment of the beneficial interest. Also admitted into evidence was a loan work-sheet that Altepeter completed on October 6, 1977, after Benjamin Massarella requested that the April note be

---

[1] The January 4, 1978, hearing and subsequent judgment of the trial court concerned the bank's response to and the transactions surrounding the third garnishment summons. The State indicated at oral argument that it has requested a ruling from the trial court regarding the bank's incomplete responses to the second garnishment interrogatories. The ruling is pending the outcome of this appeal.

renewed. This work-sheet listed the maker of the note as "Nick James Massarella D/B/A B.J.'s Truck Stop, Inc."

Altepeter testified that when a loan is made to a corporation, its name is usually recorded on the bank's records when the collateral is in the corporation's name. He stated the bank's ledger cards should have been typed with Bee Jay's name, but that the papers perfecting title in the collateral for the notes were properly captioned with Nick Massarella's name because the owner of the collateral rather than the maker of the note should be listed.

Altepeter admitted that the original loan was made to Bee Jay's after the first garnishment proceeding in which the bank paid more than $63,000 to the State out of Bee Jay's checking account. He said at the time the loan was made there was a presumed indebtedness by Bee Jay's to the State for some $840,000 and that a solvency check had been made of Benjamin Massarella rather than Bee Jay's due to the fact that the credit bureau's files were arranged according to individual names and because Benjamin Massarella was guaranteeing the note.

Altepeter testified that he had numerous conversations with Benjamin Massarella after the first garnishment summons was served. He called Massarella to inform him that funds were taken from Bee Jay's checking account and forwarded to the State. Benjamin Massarella later called him to request a loan to replenish the funds in the checking account. No conversations were held regarding the second and third garnishment proceedings; rather, copies of the garnishment papers were sent to Benjamin Massarella. Altepeter denied having a conversation with Massarella subsequent to the first garnishment in which the bank agreed to make offsets against any further garnishment proceedings. He stated that offsets were made and Bee Jay's checking account was in fact debited after the second and third garnishment summonses were served. The witness stated that, although the renewal note was not due until December 30, 1977, the bank felt jeopardized at the time of the third garnishment anticipating that payment of the note might be delayed and therefore took the "quickest and easiest method possible" by debiting Bee Jay's checking account.

Altepeter was not cross-examined by the defendant's counsel nor were any other witnesses produced by either side.

On the basis of the above testimony, the trial court concluded that the original loan was made to Nick James Massarella and that the bank failed to disclose the amount of assets it held for Bee Jay's at the time of the second and in its initial response to the third garnishment summonses and that the bank did not disclose the offsets it made. The trial court further found that the bank utilized the offset right to frustrate the objective of garnishment proceedings which was to make assets of the

judgment debtor known. As a result of this frustration, the court found the bank lost its offset right and ordered it to pay the State $35,841.39, the amount of funds existing in Bee Jay's checking account at the time of the third garnishment.

On appeal the bank contends that the trial court's reliance on *Burke ex rel. Birney v. Congress Hotel Co.* (1935), 280 Ill. App. 493, was misplaced and that the judgment should be reversed. *Burke* involved a wage garnishment wherein the employer garnishee claimed a set-off against the employee's wages but failed to make the adjustment when paying the employee's salary. The factual setting in the instant case differs because the bank garnishee made the set-off adjustment although it did not indicate this in the garnishment interrogatories. The remedy in *Burke*, the loss of the statutory right to set-off, is applicable whenever a failure to comply with the garnishment proceedings occurs, but that was not the situation in the instant case.

The appellant's second argument was that the proof was not sufficient to establish that the bank employed the offset provision to frustrate the objective of the garnishment proceeding. The State contends that the evidence clearly supported the court's findings because the bank had knowledge of Bee Jay's indebtedness to the State when the original loan was made to Nick James Massarella, who supplied the collateral. The proceeds of the loan were deposited in Bee Jay's checking account in order to give the bank the power to offset should any further garnishment proceedings occur. The State argues that the evidence also showed that the bank tried to conceal this arrangement by failing to report actual offsets when served garnishment summonses in May and October 1977. ⊙ 1, 2 The general rule that findings of the trial judge who hears a case without a jury will not be disturbed unless manifestly erroneous is applicable to garnishment proceedings. (*Theofanopoulos v. Liddell* (1969), 109 Ill. App. 2d 91, 248 N.E.2d 318.) We believe the findings in the instant case were manifestly erroneous. The evidence presented by the State does not support a finding that the original loan was made to Nick James Massarella or that the bank engaged in activity to frustrate the garnishment proceedings or to evade and avoid its statutory obligation.

Altepeter repeatedly testified that the original note was made by Bee Jay's and that Bee Jay's was the debtor. He admitted that the bank's internal documents regarding the original loan referred to Nick Massarella as the maker of the promissory note, but also said that the ledger cards should have been typed in the name of Bee Jay's Truck Stop, Inc. He attributed this error to a bank employee. It is undisputed that the proceeds of the note were deposited in Bee Jay's checking account. The proceeds of the renewal note, which specifically referred to Bee Jay's Truck Stop, Inc., and was signed by the Massarellas in their capacities as

officers of the corporation, were credited to the loan account in payment of the balance due on the original loan.

Since the loan was made to Bee Jay's, the bank could and did exercise its statutory right of set-off when the garnishment interrogatories were served. While the bank was obligated to give full details in the garnishment interrogatories concerning its election to exercise its set-off right, we do not believe that its failure in this regard requires a loss of the offset right, since the set-off was made when the interrogatories were served.

The State argues that the taking of the renewal note, standing alone, constituted a new agreement which operated to the detriment of the judgment creditor and thus served to vitiate the statutory right of set-off. (*Obergfell v. Booth* (1920), 218 Ill. App. 492.) In *Obergfell* the garnishee lost its set-off right by issuing the renewal note and "postpon[ing] its use or right to use the collateral in bringing about the payment of the indebtedness and continu[ing] to hold such collateral." (218 Ill. App. 492, 496-97.) However, this court has held that a bank need not proceed first against collateral security before exercising its right of set-off, and that this right may be exercised by the bank after receiving service of garnishment summons. (*Pines Trailer Corp. v. Roaring Express Co.* (1970), 127 Ill. App. 2d 46, 261 N.E.2d 709.) *Obergfell* has been interpreted as holding that the right to set-off is waived when the garnishee claims a debt due from the judgment debtor as an offset but in fact does not apply such debt on the amount due from it to the debtor. (See *Walters v. Bank of America National Trust & Savings Association* (1937), 9 Cal. 2d 46, 69 P.2d 839.) In *Obergfell* the bank claimed a right of set-off in the amount of $335.93 against a $1,000 loan. Thereafter, the bank issued a renewal note in the sum of $1,000 which indicated the $335 deposit "was not actually applied in payment of the debt, but was continued to be held by the bank as the property and for the benefit of the [judgment] debtor * * * considered to have been held likewise for the benefit of the attaching creditor." (*Walters*, 9 Cal. 2d 46, 56, 69 P.2d 839, 843.) The facts in the instant case differ from *Obergfell* since the evidence shows the bank made the offset after the second garnishment and the renewal note was executed in an amount reflecting the balance due on the original note.

We also do not agree with the State's contention that the bank's intention to frustrate the garnishment proceedings was evidenced by its decision to offset the amount of the outstanding loan against Bee Jay's checking account at the time of the third garnishment. The State bases this conclusion on Altepeter's testimony that the bank felt jeopardized since the renewal note was not due for another 60 days, the bank was holding collateral worth approximately four times the amount of the loan,

and Bee Jay's was depositing approximately $35,000 per week in its checking account.

Altepeter testified, however, that checks were written on Bee Jay's account as fast as deposits were made. Furthermore, section 8 of "An Act in regard to Garnishment * * *" (Ill. Rev. Stat. 1977, ch. 62, par. 40) states in part:

> "The garnishee is entitled to assert against indebtedness due to the judgment debtor offsetting demands against either or both the judgment creditor and the judgment debtor, whether (1) due at the time of service of the garnishment summons or thereafter to become due * * *. The garnishee is liable (1) for the balance of indebtedness due the judgment debtor after the offsetting demands are adjusted and (2) for the balance of other property after deducting property to which the garnishee has just claim."

● 3 The garnishee can exercise its right of set-off at the time of garnishment and deduct from the judgment debtor's deposit an amount owing on a note it issued to the judgment debtor even though the note is not yet due. (*Levinson v. Home Bank & Trust Co.* (1929), 337 Ill. 241, 169 N.E. 193.) Furthermore, as stated above, the bank need not proceed first against the collateral securing the loan before exercising its right of set-off. (*Pines Trailer Corp. v. Roaring Express Co.*) Thus, the offsets taken by the bank in the instant case were in accordance with its statutory right, since the weight of the evidence supports a conclusion that the loans were in fact made to and for the use of Bee Jay's, the judgment debtor.

For the foregoing reasons the judgment of the Circuit Court of Cook County is reversed. This case is not remanded for a new trial since no useful purpose would be served (*Prill v. City of Chicago* (1942), 317 Ill. App. 202, 46 N.E.2d 119), there being no presumption that the facts will appear other or different at another trial. *Board of Education Union District No. 4 v. School Directors* (1918), 213 Ill. App. 91; see *Manion v. Brant Oil Co.* (1967), 85 Ill. App. 2d 129, 229 N.E.2d 171.

Reversed.

SIMON and RIZZI, JJ., concur.