THE VENDO COMPANY, Plaintiff-Appellee, *v.* HARRY B. STONER *et al.*, Defendants.—(VALLEY NATIONAL BANK OF AURORA, Third-Party Respondent-Appellant.)

Second District   No. 81—799

Opinion filed July 14, 1982.—Rehearing denied August 31, 1982.

Charles J. Myler and James D. Skaar, both of Ruddy, Myler, Ruddy and Fabian, of Aurora, for appellant.

Lambert M. Ochsenschlager, Wayne F. Weiler, and Craig S. Mielke, all of Reid, Ochsenschlager, Murphy and Hupp, of Aurora, for appellee.

JUSTICE NASH delivered the opinion of the court:

Third-party respondent, Valley National Bank of Aurora (Bank), appeals from a judgment entered against it for $115,146.95 in favor of plaintiff, the Vendo Company (Vendo), after a finding the Bank as a citation respondent violated section 73(4)(a) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 73(4)(a)).

Judgments obtained by Vendo against defendants Harry B. Stoner for $170,835 and Stoner Investments, Inc. (Investments) for $7,345,000 were affirmed (*Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, 321 N.E.2d 1, *cert. denied* (1975), 420 U.S. 975, 43 L. Ed. 2d 655, 95 S. Ct. 1398), and Vendo commenced supplementary proceedings to enforce them in the circuit court of Kane County. On January 4, 1975, a citation to discover assets was issued to the Bank, on order of a judge, directing it to appear before the court for examination concerning the property of the judgment debtor. The citation served upon the Bank, as authorized by section 73(4)(a), also contained the following notice:

> "YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgement debtor or to which he may be entitled or which may be acquired by or become due to him and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to him, until the further order of court or termination of the proceedings."

On January 17, a citation deposition was taken of Paul Manning, executive vice-president of the Bank, who produced documents and tes-

tified as to other matters, but did not disclose that the Bank held U.S. Treasury Notes having a par value of $110,000 which had been pledged to the Bank by Investments as collateral for a loan by the Bank to Lektro-Vend Corporation (Lektro-Vend). Lektro-Vend was not a party to the underlying litigation which resulted in Vendo's judgment; however, Harry B. Stoner was the controlling shareholder of Investments and it was the controlling shareholder of Lektro-Vend. Stoner and members of his family also held 34 percent of the shares of the Bank, he was chairman of its board of directors and its business premises were owned by and leased from Investments.

On January 23, Stoner, Investments and Lektro-Vend filed suit against Vendo in the United States District Court alleging that Vendo's enforcement of its State court claims was in violation of Federal anti-trust laws and sought a preliminary injunction against Vendo. At a hearing held on February 14, the district judge suggested that the parties might enter into a "standstill agreement" to avoid the question of issuance of a temporary restraining order. The judge inquired whether Vendo was willing to hold up on collection efforts and whether Stoner, Investments and Lektro-Vend would undertake not to transfer assets out of the ordinary course of business while the Federal court considered the evidence and briefs to be submitted to it. The parties, through their attorneys, agreed to those terms. Counsel for Vendo also advised the court that certain citations had been served prior to that time and that while their legal effects would remain, nothing further by way of enforcement would occur. The judge stated that "whatever their status was before, it continues to be."

On March 6, however, at the direction of Harry B. Stoner, the Bank liquidated the treasury notes pledged to it by Investments to secure the loan to Lektro-Vend. The proceeds of $115,146.95 were applied to the $86,641 outstanding balance of the secured loan and also to payment of two other loans made by the Bank to Lektro-Vend, totalling $13,666.30, which were not secured by that collateral. The Bank transferred the $14,839.65 balance from the treasury notes to Lektro-Vend as an "advance" at Stoner's direction. This transaction was not revealed to Vendo by the Bank or the other parties at the time it took place, but they learned of it at a later date.

The standstill agreement continued in force until June 27, 1975, when the district court entered a preliminary injunction restraining all collection proceedings by Vendo. (*Lektro-Vend Corp. v. Vendo Co.* (N.D. Ill. 1975), 403 F. Supp. 527.) On appeal the injunction was reversed by the United States Supreme Court (*Vendo Co. v. Lektro-Vend Corp.* (1977), 433 U.S. 623, 53 L. Ed. 2d 1009, 97 S. Ct. 2881),

and the Federal litigation was finally dismissed in 1981.

At some time during the Federal litigation Vendo learned the Bank had held the treasury note collateral pledged by the judgment debtor, Investments, and had liquidated it and transferred the proceeds. On April 10, 1981, Vendo filed a motion in the circuit court of Kane County for judgment against the Bank, pursuant to section 73(4)(a) of the Civil Practice Act, in the amount of the value of the property of the judgment debtor allegedly transferred in violation of the restraining provisions of the citation. The Bank responded denying liability and at the hearing of Vendo's motion for judgment Paul Manning, the Bank's executive officer, testified he was aware of and had relied upon the standstill agreement made in the district court and that the transfer of funds from Investments to Lektro-Vend was carried out in the ordinary course of business as permitted by that agreement. Manning also testified he believed ownership of the treasury notes was transferred to the Bank when they were pledged as security and that they were not subject to disclosure under the citation. He further testified that the Bank made its decision to call the Lektro-Vend loan and liquidate the collateral because Lektro-Vend was suffering losses and the United States Comptroller of Currency referred to the loan as possible trouble. Frank Nemecheck, president of the Bank, testified that it had rejected Lektro-Vend's application for additional loans. There was also evidence presented that the Bank had received an opinion from its attorneys that the treasury notes were not subject to the citation. After the hearing the judgment was entered from which the Bank now appeals.

The Bank contends first that the trial court erred in refusing admission of transcripts of the district court proceedings at which the "standstill agreement" was entered into between those parties. It argues the transcripts were relevant as evidence Vendo had waived its right to proceed against the Investment collateral held by the Bank and that Vendo is estopped to complain of the transfer of the treasury notes to which it implicitly agreed in order to avoid issuance of a restraining order against it. The Bank also asserts that the transcripts of the agreement offered evidence that Investments and Lektro-Vend could continue to operate and to transfer assets in the ordinary course of business, thus properly carrying out the treasury note transaction in question without violating section 73.

We agree that the transcripts, which have been preserved for our consideration by an offer of proof, ought to have been allowed in evidence. Each party is entitled to present evidence which is relevant and material to his theory of the case (*Schneider v. Kirk* (1967),

83 Ill. App. 2d 170, 180, 226 N.E.2d 655, 659, *appeal denied* (1967), 36 Ill. 2d 632), and evidence which tends to show conduct inconsistent with an opponent's theory is admissible (*Haffa v. Haffa* (1969), 115 Ill. App. 2d 467, 474, 253 N.E.2d 507, 511, *appeal denied* (1970), 42 Ill. 2d 585; *Vacker v. Yeager* (1909), 151 Ill. App. 144, 152). Clearly, evidence that Vendo approved or consented to the transaction upon which it based its motion for judgment would be relevant and could be controlling of the outcome of the case. The trial court erred in refusing to admit and consider the transcripts and in denying the Bank's offer of proof. Since they are contained in the record on appeal we will consider them as if the trial court had admitted them into evidence below. *Phillips v. Salk, Ward & Salk, Inc.* (1974), 20 Ill. App. 3d 359, 367, 314 N.E.2d 262, 268; *Gundich v. Emerson-Comstock Co.* (1960), 24 Ill. App. 2d 138, 143, 164 N.E.2d 512, 515, *rev'd on other grounds* (1960), 21 Ill. 2d 117, 171 N.E.2d 60.

■ Estoppel is the good faith reliance by one party, to the extent of a change of position to his detriment, upon the conduct of the other as a result of which that other party will not be permitted to raise a contention inconsistent with his misleading conduct. (*Terracom Development Group, Inc. v. Coleman Cable & Wire Co.* (1977), 50 Ill. App. 3d 739, 747, 365 N.E.2d 1028, 1034; *Allstate Insurance Co. v. National Tea Co.* (1975), 25 Ill. App. 3d 449, 461, 323 N.E.2d 521, 530, *appeal denied* (1975), 58 Ill. 2d 596.) Consideration of the transcripts, however, the essential aspects of which we referred to earlier, does not find support for the Bank's waiver or estoppel argument. At most, the agreement made in the Federal court required that Vendo not proceed in its collection efforts beyond the place it had reached at that point; no additional enforcement procedures would be undertaken by it, but the legal effect of the citation which had been served on the Bank would continue in force. It seems apparent the Bank could not rely upon the doctrines of waiver or estoppel to avoid the judgment imposed upon it. Nor can the Bank persuasively argue that the treasury note transaction was permitted as undertaken in the ordinary course of business. The collateral was held by it subject to the continuing restraints of the citation and its transfer in these circumstances may not be considered as undertaken in the ordinary course of business.

The Bank next contends the trial court erred in entering judgment for the entire value of the collateral without giving the Bank a right of set-off as the holder of a security interest. See Ill. Rev. Stat. 1979, ch. 62, par. 40.

Section 73(4)(a) of the Civil Practice Act provides, in part:

"The citation may prohibit the party to whom it is directed from making or suffering any transfer or other disposition of, or interfering with, any property *not exempt from execution, a deduction order or garnishment,* belonging to the judgment debtor *** until the further order of the court or the termination of the proceeding, whichever comes first. *** The court may punish any party who violates the restraining provision of a citation as and for a contempt, or if he is a third party may enter judgment against him in the amount of the unpaid portion of the judgment and costs allowable under this section, *or in the amount of the value of the property transferred,* whichever is lesser." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 110, par. 73(4)(a).

The Bank essentially argues that under section 73(4)(a) a citation respondent may not be restrained from transferring or making other disposition of property of the judgment debtor held by it where the property is exempt from "execution, a deduction order or garnishment." It states that a proper interpretation of the penalty provision of the statute allows only a judgment against it for the value of the transferred property which is not so exempt, in this case the amount the value of the treasury notes exceeded the Bank's security interest.

It is true that the Bank held the treasury notes as a security interest which arose prior to Vendo's judgment and it was thus entitled to priority over the lien creditor. (Ill. Rev. Stat. 1979, ch. 26, par. 9–301(4).) It is also true the Bank would have been entitled to a set-off had Vendo learned the Bank was holding property of the judgment debtor and instituted garnishment proceedings against it. (Ill. Rev. Stat. 1979, ch. 62, par. 40; *Bee Jay's Truck Stop, Inc. v. Department of Revenue* (1980), 86 Ill. App. 3d 7, 13, 407 N.E.2d 755, 760, *appeal denied* (1980), 81 Ill. 2d 589.) The question presented by this case, however, is whether the Bank by failing to disclose it held this property of the judgment debtor and in transferring it to itself and others became subject to the penalty provisions of section 73(4)(a) for violating the restraining order of the citation.

In suggesting that the treasury notes were, in part, "exempt" from execution, a deduction order or garnishment, thus neither subject to disclosure under the citation or as a basis for imposition of a penalty, the Bank apparently considers that its position as a secured party holding property of the judgment debtor is equivalent to an exemption of that property from the requirements of the statutes relating to supplementary proceedings. It notes that a claim of an interest by a citation respondent in assets subject to discovery is determined

according to the provisions of the garnishment act (Ill. Rev. Stat. 1979, ch. 110, par. 73(5)), and that property subject to a security interest is distributed first to satisfy that interest and only the balance applied to the judgment creditor's claim. (*North Bank v. F & H Resources, Inc.* (1977), 53 Ill. App. 3d 950, 369 N.E.2d 174, *appeal denied* (1978), 71 Ill. 2d 598; see also *Marcheschi v. P.I. Corp.* (1980), 84 Ill. App. 3d 873, 405 N.E.2d 1230; *Liberty Leasing Co. v. Crown Ice Machine Leasing Co.* (1974), 19 Ill. App. 3d 27, 311 N.E.2d 250.) The Bank concedes that had it disclosed the treasury notes, Vendo would also have been entitled to tender the amount of the security interest and would then be entitled to possession of the notes (Ill. Rev. Stat. 1979, ch. 62, par. 46(b)), and argues that the most Vendo was deprived of by the Bank's failure of disclosure was the difference between the required tender and the value of the notes. It concludes section 73(4)(a) only allows for a judgment against the citation respondent for that difference as representing the value of the nonexempt property transferred.

In considering the Bank's argument, however, it becomes apparent it is premised upon an assumption the legislature intended that property exempt from "execution, a deduction order or garnishment" includes the treasury notes held as a security interest by the Bank as a citation respondent. We find no reference providing such an exemption in the statutes relating to that subject (see Ill. Rev. Stat. 1979, ch. 52; ch. 77, pars. 4, 10; ch. 62, pars. 39-47), and conclude the legislature did not so intend.

Supplemental proceedings under section 73 of the Civil Practice Act are designed to provide a statutory foundation for an efficient and expeditious procedure to compel discovery of assets of the judgment debtor and their application to payment of the judgment. (Ill. Ann. Stat., ch. 110, par. 73, Committee Comment, at 398 (Smith-Hurd 1968).) While certain exempt property is outside the scope of section 73, the legislative scheme clearly requires the citation respondent to hold property of the judgment debtor in its possession in status quo until the judgment creditor's rights can be determined. (*Kirchheimer Brothers Co. v. Jewelry Mine, Ltd.* (1981), 100 Ill. App. 3d 360, 362, 426 N.E.2d 1110, 1113.) That was the direction of the citation served upon the Bank and which it disregarded. Section 73(5) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 73(5)) and sections 8 and 10 of the garnishment act (Ill. Rev. Stat. 1979, ch. 62, pars. 40, 42) provide means by which conflicting claims or off-setting demands against property may be determined by the trial court and make no allowance for the unilateral disposition of such property without dis-

closure as in this case.

The Bank principally relies upon *Bee Jay's Truck Stop, Inc. v. Department of Revenue* (1980), 86 Ill. App. 3d 7, 407 N.E.2d 755, *appeal denied* (1980), 81 Ill. 2d 589, for its argument that the statutory sanction applied against it improperly failed to allow for set-off of the sum secured by the pledge of the treasury notes by the judgment debtor. There, a garnishee bank upon being served with summons immediately exercised its right to set-off by deducting from the judgment debtor's funds on deposit the amount owed to the garnishee on a promissory note; it also at that time disclosed the balance remaining and subsequently disclosed the total sum held by it at the time it was served with summons. The reviewing court concluded that because the set-off was in fact made at the time of garnishment, that garnishee did not lose its set-off right as it had complied with the garnishment proceedings. Compare *Burke v. Congress Hotel Co.* (1935), 280 Ill. App. 493; see also *Pines Trailer Corp. v. Roaring Express Co.* (1970), 127 Ill. App. 2d 46, 261 N.E.2d 709; *Alexander v. Live Stock National Bank* (1935), 282 Ill. App. 315; *Stevens v. Dillman* (1877), 86 Ill. 233; *Hotpoint v. Granite City Furniture, Inc.* (1979), 76 Ill. App. 3d 1037, 395 N.E.2d 639, *appeal denied* (1980), 79 Ill. 2d 626.

Not so, however, in the present case. The Bank here failed to disclose at the citation hearing on January 17, 1975, that it held property of the judgment debtor and it was not until March 6 that it purported to exercise its right to a set-off. The Bank then liquidated the treasury notes for $115,146.95, paying itself $100,307.30 although it only had a secured claim of $86,641. The $14,839.65 balance remaining was given over by the Bank to Lektro-Vend under unclear circumstances. Vendo did not learn of the existence of the judgment debtor's property or its disposition until much later when it learned of the transaction during discovery proceedings in the Federal litigation.

■ We find in these circumstances the Bank lost its right to set-off and that the trial court properly imposed the sanction provided by entering a judgment for the full value of the treasury notes thus removed out of reach of the judgment creditor in violation of the command of the citation. To conclude otherwise would foster nondisclosure of property held by a citation respondent contrary to the clear purposes of the statute.

The Bank also contends that section 73(4)(a) of the Civil Practice Act is unconstitutional insofar as it permits a citation to be issued by a clerk in the form of an injunction or restraining order. In this case, however, the clerk of the court issued the citation on the written or-

der of a judge and we will not consider that issue further. See, *e.g.*, Ill. Ann. Stat., ch. 110, par. 73, Historical & Practice Notes, at 401-02 (Smith-Hurd 1968).

The Bank has also contended that the evidence did not support the additional finding by the trial court in support of the judgment that the transfer of the treasury notes was a fraudulent conveyance. As we have determined the judgment was properly entered under section 73(4)(a) of the Civil Practice Act, we need not consider this issue.

Accordingly, the judgment of the circuit court of Kane County will be affirmed.

Affirmed.

UNVERZAGT and VAN DEUSEN, JJ., concur.