STATE BANK OF PIPER CITY, Plaintiff-Appellant, v. A WAY, INC., Defendant-Appellee.

Third District   No. 3—84—0667

Opinion filed August 8, 1985.—Rehearing denied September 25, 1985.

HEIPLE, P.J., dissenting.

Randell S. Morgan, of Kinate & Morgan, of Fairbury, for appellant.

James B. Kinzer, of Bell, Razzano, Blunk, Kinzer & Lustfeldt, of Watseka, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The instant cause of action was initiated on April 7, 1983, in the circuit court of Iroquois County by the State Bank of Piper City (State Bank) as a lien foreclosure suit under section 9—501 *et seq.* of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 9—501 *et seq.*). In this suit, State Bank seeks an accounting for grain delivered to defendant A Way, Inc., a grain elevator, by State Bank's debtor, Bill Brenner. Attached to the complaint are copies of promissory notes executed by Brenner in 1981 in favor of State Bank for various loans and security agreements covering, *inter alia*, grain grown by Brenner in Ford and Iroquois counties.

In a prior action, entitled State Bank of Piper City vs. William Brenner and instituted in Ford County, State Bank obtained a money judgment on February 23, 1982, in the amount of $131,083.91 on the defaulted promissory notes. In proceedings to enforce judgment in that suit in Iroquois County, State Bank served a citation to discover assets on A Way. On June 24, 1982, A Way disclosed by affidavit of Jerry Ash, its president, that it possessed 5141.20 bushels of corn on Brenner's account. On August 2, 1982, State Bank moved for a citation order directing A Way to pay over to State Bank $5,141.20 as partial satisfaction of its judgment against Brenner. The matter was called for a hearing on August 9, 1982. The record before us discloses that on that date A Way failed to appear, and an order was entered granting State Bank's motion for the amount requested. A Way then sold the corn for $2.20 per bushel, paid $5,141.20 over to State Bank and applied the balance of the proceeds—$6,169.44—to various service

charges and other accounts for goods incurred by Brenner at the defendant elevator. The record contains allegations that Brenner initiated bankruptcy proceedings at some point in Kankakee County, but the timing of that action is unclear. In any event, the State Bank brought the instant suit seeking to enforce its Uniform Commercial Code lien on the grain after realizing its apparent error in moving for a citation order in the prior suit in a dollar amount equal to the bushels of corn stored by A Way in June of 1982, even though the grain had not yet been sold at that time.

On May 20, 1983, A Way moved for an order requiring plaintiff to plead with more particularity and for an order dismissing the complaint on grounds of merger and *res judicata*. By agreement of the parties, plaintiff amended its complaint and the matter proceeded to a hearing on defendant's motion to dismiss. Following arguments of counsel, and consideration of the parties' briefs, the court allowed defendant's motion. Plaintiff's post-judgment motion to vacate was denied, and a timely notice of appeal filed by plaintiff conferred jurisdiction of the matter in this court.

The issue to be decided in this appeal is whether citation proceedings affecting a debtor's assets in the possession of a third party operate as *res judicata* to bar a later cause of action brought by the creditor directly against the possessor to enforce the creditor's secured interest in the same assets. The precise question posed by this case does not appear to have been addressed in any reported decision in this State. That is understandable, since the issue would appear to have occasion to arise only in the unique situation, such as here, where the secured party in a citation proceeding, through oversight or mistake, fails to recover the full extent of secured assets in the hands of a third party.

While we recognize, as did the trial court, that the shortcoming in the citation proceeding is attributable to an obvious oversight by plaintiff's attorney, we do not find defendant's position supported by sufficient legal or equitable reasoning to sustain the court's ruling debarring plaintiff from pursuing a remedy here that would cure its attorney's mistake.

■ Defendant strenuously urges that the doctrine of merger applied so as to subsume any rights State Bank had by reason of its loan agreements and promissory notes in the judgment obtained against Brenner. While it is true that the duties and rights as between State Bank and Brenner on the notes and loan agreements merged into the judgment, it does not appear that the documents securing the promissory notes were necessarily at issue in the earlier

action. Clearly State Bank was at liberty to pursue any assets of Brenner's subject to its judgment lien through citation proceedings whether or not such assets were concurrently subject to a security agreement. Accordingly, we hold that the doctrine of merger does not apply to extinguish State Bank's right to enforce a lien created by security agreements signed by its debtor in 1981.

Having determined that the security instruments were not merged in the earlier judgment against Brenner nor in the citation order entered in supplemental proceedings enforcing that judgment, we consider whether the doctrine of *res judicata* applies.

A discussion of the doctrine appears in the recently decided case of *Lester v. Arlington Heights Federal Savings & Loan Association* (1985), 130 Ill. App. 3d 233, 238, 474 N.E.2d 33:

"  '*** The doctrine of *res judicata* provides that "a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the *same* claim, demand or cause of action." (Emphasis added.) [Citation.] When *res judicata* is established "as a bar against the prosecution of a second action between the same parties upon the same claim or demand *** it is conclusive not only as to every matter which was offered to sustain or defeat the claim or demand, but as to any other matter which might have been offered for that purpose. ***"  ***'  *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 251-52.

For the *** doctrine of *res judicata* to apply, both actions must involve the same cause of action. In comparing two actions to determine whether they are based on the same cause of action, the test is whether the facts are identical or whether the same evidence would sustain both actions. (*Renner v. Greathouse* (1957), 12 Ill. App. 2d 338, 341.)"

*Res judicata* is a harsh doctrine, especially when it is used, as here, to dispose of an otherwise valid claim advanced upon the discovery of an apparent mistake of fact which undergirded an earlier action. So, as to avoid an unjust result we apply the aforecited evidence test narrowly. The evidence required in the prior citation proceeding was that A Way had in its possession property in which Brenner had an interest and which was not exempt from satisfaction of State Bank's judgment. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1402(b).) A Way contends that the fact that the corn was collateral securing the notes upon which State Bank's judgment against Brenner was based would raise the issue of whether the corn was "exempt" for

purposes of the citation proceeding. *Ergo*, A Way argues, evidence of State Bank's security interest might have been offered to sustain or defeat State Bank's claim in the citation proceeding. Thus, the same evidence of a security interest in the corn which is essential to prove State Bank's Uniform Commercial Code action (Ill. Rev. Stat. 1983, ch. 26, par. 9—501 *et seq.*), according to this line of reasoning, could have been introduced to sustain both actions.

The problem with A Way's reasoning is that it assumes that the legislature intended "exempt" property to encompass property subject to a security interest. This precise argument was advanced in *Vendo Co. v. Stoner* (1982), 108 Ill. App. 3d 51, 438 N.E.2d 933, and rejected by the court on review. There, Vendo Company obtained judgments against Harry Stoner and Stoner Investments, Inc., for $170,835 and $7,345.00, respectively. In supplemental proceedings initiated by Vendo in 1975 to enforce the judgment, a citation to discover assets was issued to Valley National Bank of Aurora pursuant to section 73 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 73 (now, ch. 110, par. 2—1402)). The citation contained notice, pursuant to section 73(4)(a), prohibiting the bank from transferring "any property not exempt from execution or garnishment" in which the judgment debtor had a property interest until termination of the supplementary proceedings. (*Vendo Co. v. Stoner* (1982), 108 Ill. App. 3d 51, 52, 438 N.E.2d 933, 935.) The bank failed however, to disclose at that time that it held U.S. Treasury notes which Investments had pledged as collateral for a loan by the bank to Lektro-Vend, apparently a subsidiary corporation of Investments, both of which were controlled by Stoner. During subsequent Federal litigation, Vendo discovered that subsequent to the citation proceedings in 1975 the bank had liquidated the notes for $115,146.95, paid itself $86,641 on its security interest and an additional $13,666.30 on unsecured loans and transferred the remaining proceeds to Lektro-Vend. Consequently, in April of 1981, Vendo moved for judgment against the bank for the value of the property transferred in violation of the restraining provision of the 1975 citation. The trial court found in favor of Vendo and entered judgment against the citation-respondent in the amount of $115,146.95.

The bank appealed, contending, *inter alia*, that it had no duty to disclose collateral in which it held a security interest, and, in any event, section 73(4)(a) only allows for judgment against a citation respondent in an amount equal to the difference between the amount of the secured interest in the collateral (in this case $86,641) and the value of the collateral (here, $115,146.95), or $28,505.95. The bank

theorized that the secured interest in the notes represented "exempt" property as that phrase is used in the statute authorizing supplementary proceedings to enforce judgments. On appeal, the court rejected the bank's position:

> "In considering the Bank's argument, however, it becomes apparent it is premised upon an assumption the legislature intended that property exempt from 'execution, a deduction order or garnishment' includes the treasury notes held as a security interest by the Bank as a citation respondent. We find no reference providing such an exemption in the statutes relating to that subject (see Ill. Rev. Stat. 1979, ch. 52; ch. 77, pars. 4, 10; ch. 62, pars. 39-47), and conclude the legislature did not so intend." *Vendo Co. v. Stoner* (1982), 108 Ill. App. 3d 51, 57, 438 N.E.2d 933, 938.

The court agreed with the trial court that the bank's transfer had violated the restraining provisions of the 1975 citation and that, as a sanction for its conduct, the bank had lost its right to a setoff for the amount of its security interest. Accordingly, judgment for Vendo was affirmed in the full amount of the proceeds from the liquidation of the treasury notes.

Applying the foregoing rationale to the instant case, it is apparent that the corn held by A Way was not "exempt" property by reason of State Bank's secured interest in it. There were no adverse claimants to the $5,141.20 sum sought by State Bank in the citation proceedings. Thus, for purpose of that action, the bank, as judgment creditor, was not required to establish either the existence or perfection of a security interest, its amount, or that its security interest in the corn had priority over any interests of A Way and the judgment debtors (the only other entities alleged by Ash in his affidavit to have an interest in the corn). We need not indulge in further speculation as to what evidence "might" have been offered in the citation proceeding to defeat State Bank's claim had adverse claimants appeared or had the circumstances been different in other respects.

■ Proof of the security agreement documents, the amount secured, perfection, and State Bank's priority are all essential elements to the subsequent Uniform Commercial Code action filed directly against A Way. On the other hand, section 2—1402 proceedings are unavailable to creditors, secured or otherwise, until after judgment capable of enforcement has first been entered in their favor. Since the evidence required to prove State Bank's claim in the two causes differed, we hold that State Bank is not barred by the doctrine of *res judicata* from pursuing its Uniform Commercial Code lien foreclosure

cause of action.[1]

For the foregoing reasons, we reverse the judgment of the circuit court and remand this cause for further proceedings.

Reversed and remanded.

SCOTT, J., concurs.

PRESIDING JUSTICE HEIPLE, dissenting:

I dissent.

The order of the court below was entirely proper. Above all else, the doctrine of *res judicata* is based on the idea that finality in litigation is an end in itself.

In plaintiff's citation proceeding, defendant conceded all issues of law and fact necessary to support an order turning all of the farmer's grain over to plaintiff. As the court below correctly found, plaintiff's attorney drafted an order which confused bushels for dollars. There is no question that the order was intended as a final resolution of plaintiff's claims against defendant.

Plaintiff's efforts to avoid the dictates of *res judicata* are unavailing. Its common law action depends entirely on those matters of fact and law which were the basis of the final order in the citation proceedings. When that order was entered, defendant had the right to pursue its interests in reliance thereon.

Alternatively, the judgment might be affirmed based on Supreme Court Rule 277 (87 Ill. 2d R. 277). Although not considered by the trial court, the judgment may be upheld on any basis evident from the record. Rule 277 provides, "If there has been a prior supplementary proceeding with respect to the same judgment against the party, whether he is the judgment debtor or a third party, no further proceeding shall be commenced against him except by leave of court." While the instant action is not a supplementary proceeding in name, it is functionally identical. Thus, without any reference to *res judicata,* one can support the actions of the trial court. Plaintiff seeks by indirection that which he cannot pursue directly without leave of court. Judge Dannehl's order can be read as denying leave of court for what is essentially a supplementary proceeding, even if not captioned as such.

---

[1]We note in passing that our resolution of the issue before us today comports with the spirit of Supreme Court Rule 277 (87 Ill. 2d R. 277), in that the Rule would permit discretionary multiple section 2—1402 proceedings in situations, such as here, where the entry of a prior judgment against a third party respondent is grounded on an obvious mistake of fact inuring to the benefit of the third party respondent, and a subsequent proceeding is not initiated for the purpose of harassment.