UNITED SEEDS, INC., APPELLEE, V. EAGLE GREEN CORPORATION, APPELLEE, BANK OF MILLARD, GARNISHEE-APPELLANT.
389 N.W.2d 571

Filed July 3, 1986.   No. 85-291.

Thomas J. Walsh, Jr., of Walsh, Fullenkamp, Doyle & Rau, for appellant.

William J. Brennan, Jr., and Debra A. Egli of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellee United Seeds.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

Having obtained a judgment of $6,074.47 plus costs against Eagle Green Corporation (Eagle Green), the appellee United Seeds, Inc., had a summons in garnishment served on the appellant, Bank of Millard, in an attempt to collect its judgment. After the bank filed negative answers to the garnishment interrogatories, United Seeds filed an application to determine the liability of the garnishee. Trial was had in the Omaha Municipal Court, and judgment was rendered against the Bank of Millard in the full amount of $6,074.47 plus interest and costs. On appeal to the district court for Douglas County, the judgment was affirmed. We also affirm.

The underlying judgment in this garnishment proceeding was entered against Eagle Green on April 4, 1984. At the time, Eagle Green had a checking account with the Bank of Millard, and the bank held three promissory notes issued by Eagle Green. Two of these notes were due and owing as of May 14, 1984, in the amounts of $24,000 and $25,000. Over the previous 2-year period, it had become routine for the bank to grant Eagle Green extensions on the notes, there being 13 extensions on principal payments on the $24,000 note and 9 extensions on principal payments on the $25,000 note during that period.

On May 15, 1984, however, the Bank of Millard broke with tradition. Jerry J. Jaros, vice president and lending officer in charge of the Eagle Green account, contacted Eagle Green to discuss the company's failure to make a principal payment on the notes. Eagle Green authorized the bank to apply $9,000 from its checking account in payment on the two matured promissory notes. The $9,000 debit on Eagle Green's checking account reduced the balance to $1,237.54. When the Eagle Green official pointed out that the $9,000 payment would cause the company cash-flow problems, Jaros agreed to honor outstanding and unpresented checks issued by Eagle Green.

In accordance with their agreement the Eagle Green checking account was debited for $9,000 around noon on May 16. However, the payment on the matured notes in the amount of $4,500 each was not posted until after 2 p.m., the close of the bank's business day. Payments were credited on the notes themselves as of May 17. In the meantime, at 3:15 p.m. on May

16, the Bank of Millard was served with a summons in garnishment in the instant case. In answers to interrogatories signed by Jerry Jaros on May 17, the bank responded to the standardized questions as follows:

Q1. Is the above-named defendant [Eagle Green Corporation]

(a) in your employ, no

(b) is he a creditor of yours, no

(c) or is he a depositor of yours? no

. . . .

Q3. Did you owe the defendant any money, credits or property on the date you were served with Garnishment Summons? NA

. . . .

Q7. Does the defendant have any money on deposit with you excluding wages; and if so how much? [no response]

At trial Jerry Jaros explained his answers to interrogatories as mistakes. By the time the answers were filled in on May 17, the Bank of Millard had honored Eagle Green's overdrafts, so that the checking account had a negative balance. Thus, the Bank of Millard admits that it erroneously treated as nonexistent an account through which $35,000 flowed in a matter of 15 days.

Additionally, the Bank of Millard failed to comply with Neb. Rev. Stat. § 25-1056 (Reissue 1985), which requires a garnishee to hold property and credits of the defendant under the garnishee's control at the time of the service of summons and interrogatories until further order of the court. The checking account statement indicates that there was no interruption of the banking relationship as a result of the garnishment. Eagle Green continued to draw on the account and to make deposits. The bank honored five overdrafts between May 17 and 22, in the amounts of $3,712.50, $23.34, $85.65, $7,064.60, and $189.18. Even after Eagle Green made deposits sufficient to correct the negative balance and to raise it above the balance at the time of service of summons, the bank still allowed Eagle Green to draw on the account.

On appeal the Bank of Millard claims (1) that the $9,000

debit on the Eagle Green checking account was a valid setoff of a general deposit against a matured debt of the depositor and (2) that the Bank of Millard's right of setoff was superior to United Seeds' right in garnishment.

In the application to determine liability of the Bank of Millard, garnishee, United Seeds alleged that the bank "engaged in bookkeeping entries with the defendant to change the balance of the account as of the date of the service of the garnishment on said bank after notice of this plaintiff's claim." United Seeds expanded on that theory at trial and on appeal, describing the Bank of Millard's agreement with Eagle Green as one to allow Eagle Green the full use of the money paid on the two matured notes while shielding it from garnishment. United Seeds essentially asked the trial court to disregard the $9,000 debit to the checking account as an invalid, sham setoff.

Three steps must be taken to maintain a setoff. There must first be an intent and decision to exercise the right to set off, a subsequent action which completes the setoff, and finally a record which verifies that the action has been taken. *Baker v. National City Bank of Cleveland*, 511 F.2d 1016 (6th Cir. 1975). A mere declaration of an intent to set off retrospectively does not establish a setoff. *In re Archer*, 34 B.R. 28 (N.D. Tex. 1983).

Although the bookkeeping entries on the Eagle Green checking account appear to be consistent with an intent to set off as of May 16, overdrafts posted on subsequent days tend to disprove such intent. The technical bookkeeping requirements of (1) a debit of $9,000 posted to the checking account and (2) payments of $4,500 each on two matured promissory notes are clearly in evidence.

However, the bank's willingness to honor Eagle Green's overdrafts does not indicate that the bank was feeling particularly insecure about Eagle Green's ability to repay its outstanding notes. It is questionable why the bank suddenly refused to grant extensions on its depositor's notes as it had 22 times in the past, yet essentially loaned the depositor a similar amount by honoring the depositor's overdrafts.

The trial court, after hearing all the evidence, apparently concluded that the claimed setoff was precipitated by the imminent garnishment and that the agreement to honor Eagle

Green's overdrafts was, in effect, an agreement to allow Eagle Green the full use of its deposits while circumventing the garnishment statutes. Such an agreement is inconsistent with an intent to exercise the right of setoff, and will not be upheld. See *Walters v. Bank of America etc. Assn.*, 9 Cal. 2d 46, 69 P.2d 839 (1937). The trial court was correct to hold the setoff invalid.

Any further right of setoff was lost to the Bank of Millard as a result of its subsequent actions in response to the summons in garnishment. A garnishee bank may be estopped to exercise a right of setoff when it fails to comply with garnishment proceedings. *Bee Jay's Truck Stop v. Dept. of Revenue*, 86 Ill. App. 3d 7, 407 N.E.2d 755 (1980). The bank's denial of the existence of Eagle Green's checking account in answers to interrogatories prevented the plaintiff, United Seeds, from acting promptly to protect its interest in funds deposited by Eagle Green.

Further, a garnishee bank waives its right of setoff if after notice of garnishment it permits the depositor to draw on the garnished account, reducing the account balance below the balance at the time of service or, if that balance is greater than the amount of judgment, below the amount of the judgment. *Coastal Adj. Bureau v. Hutchins*, 229 Or. 418, 367 P.2d 430 (1961); § 25-1056. The Bank of Millard not only failed to place a hold on the $1,237.54 balance at the time of service, it allowed Eagle Green overdrafts totaling $11,075.27.

The $9,000 transaction between Eagle Green and the Bank of Millard on May 16 was not a valid setoff, and any continuing right of setoff was lost due to the bank's improper response to the garnishment proceeding. The judgment against the Bank of Millard in the amount of $6,074.47 plus interest and costs is affirmed.

AFFIRMED.