John W. WENNEKER and Burt M. Wenneker d/b/a Wenneker Delmar Partnership, Garnishors–Plaintiffs–Appellants,

v.

PHYSICIANS MULTISPECIALTY
GROUP, INC., Defendant,

and

South Side National Bank in St. Louis,
Garnishee–Respondent.

No. 73432.

Supreme Court of Missouri,
En Banc.

July 23, 1991.

As Modified on Denial of Rehearing
Sept. 10, 1991.

John E. Bardgett, Mark H. Levison, Nelson L. Mitten, Clayton, for garnishors-plaintiffs-appellants.

Fortis M. Lawder, St. Louis, for garnishee-respondent.

BLACKMAR, Judge.

Here we treat of the right of a garnishee to set off claims it has against the judgment debtor. The essential facts are stipulated and both sides agree that there are no factual disputes. Most of the somewhat complicated facts are not necessary to the resolution of the legal issues.

The garnishor, Wenneker Delmar Partnership, recovered a judgment against Physicians Multispecialty Group, Inc. (PMG.) in the amount of $122,934.46, including attorney's fees of $2,000.00. It caused South Side National Bank in St. Louis to be summoned as garnishee. At the time the garnishment summons was served, July 12, 1989, PMG had a total of $176,166.71 on deposit in two accounts.

The bank sought to set off the amount of $151,384.08, representing installments of rent, at the time of the service of the garnishment, against its deposit liability to PMG in responding to the garnishment. It conceded that PMG had an outstanding balance over and above the asserted indebtedness in the amount of $24,330.97, and that amount was paid into court.[1]

The indebtedness the bank asserts arose out of a lease transaction between Netherton Building Partnership as lessor and PMG as lessee. The leased premises (the Project) were the subject of a bond issue. Netherton executed a note which was secured by a deed of trust and security agreement on the leased premises, and the bank acquired the note. The note states that the principal and interest were payable out of rent and revenue from the building project. Netherton explicitly assigned the

rents coming due from PMG as further security for this note. PMG agreed that its lease would be subordinate to any deeds of trust placed on the premises and also agreed that Netherton had the right to assign its interest in the lease as security for financing the project. In October of 1988 PMG abandoned the premises and ceased paying rent. The bank took possession under the terms of the assignment without terminating the lease. Netherton defaulted on the note held by the bank. On March 16, 1989 the bank foreclosed its deed of trust and purchased the leased premises at the foreclosure sale for $400,000. Thus the bank was entitled to all unpaid rents, whether accruing before or after the foreclosure, and these, together with charges such as taxes and insurance which PMG was obliged to pay by contract, amounted to $106,262.97 at the time the garnishment was served. The bank also claims that it was entitled to set off the rents accruing after the service of the garnishment, which amounted to $45,121.11 at the time the bank sold the property on September 13, 1989.

Wenneker argues that debts owed to the bank as lessor and as assignee of rents may not be set off against deposits. It also claims that the bank waived any right of setoff by paying two checks after the service of the garnishment.

The trial court entered summary judgment for the bank. The Court of Appeals, Eastern District, reversed, essentially accepting Wenneker's arguments. We granted transfer because of the importance of the question of a garnishee's right of setoff and the paucity of authority. We now sustain the bank's right to set off only the indebtedness due it at the time of the garnishment, and reverse and remand for the entry of a modified judgment. We also reject Wenneker's claim of waiver.

### 1. Set–Off of Rental Payments

Wenneker argues that a garnishee's right of set-off exists only as to claims

---

1. The bank initially asserted setoffs in excess of the sums on deposit, but reduced its claim be-
fore the case was submitted on stipulated facts.

which satisfy a requirement of "mutuality." Thus, it argues, claims arising out of an assignment and claims for rent may not be set off against bank deposits. It does not adduce persuasive authority for its contention.

The only Missouri case cited is *Mercantile Trust Co. v. Mosby*, 623 S.W.2d 22, 24 (Mo.App.1981), holding that there may be setoff only of demands that are "mutual and subsisting between the same parties and ... due in the same capacity and right." The case holds that a person may not defeat or diminish a claim against him individually by setting off a claim due him in his capacity as statutory trustee of a corporation which has forfeited its charter. The case is of no assistance here because the bank was entitled to the rents absolutely and for its own account, and was of course liable for the deposits in this same capacity.

Also cited are *U.S. v. John A. Johnson & Sons*, 111 F.Supp. 785 (E.D.Tenn.1953), and *Manchester Premium Budget Corp. v. Manchester Ins. & Indem. Co.*, 612 F.2d 389 (8th Cir.1980), applying Ohio law. These cases were not decided under Missouri law and are so factually dissimilar that extended discussion is not helpful. In both, it was suggested that the garnishee was seeking preferred creditor status, and that is not a concern here. We do not perceive an overriding rule of law such as Wenneker seeks to extrapolate from these cases.

■ Missouri law rather holds that garnishees may set off any matured and liquidated claims they hold against judgment debtors.[2] Garnishment is a legal process through which a holder of a judgment may apply sums which others owe the judgment debtors to the satisfaction of the judgment. *See generally Ch. 525, RSMo 1986.* It is said that the garnishor stands in the shoes of the judgment debtor. *Davis v. Thompson*, 619 S.W.2d 754, 756

(Mo.App.1981) (citing cases). It follows that the garnishor may reach the indebtedness which the garnishee has a present obligation to pay to the judgment debtor at the time of service, and nothing beyond this. In *Firebaugh v. Stone*, 36 Mo. 111, 115 (1865) this Court quoted from *Drake on Attachments*, § 672, as follows:

> an attaching creditor can hold the garnishee only to the extent of the defendant's claim against the garnishee, and he can acquire no rights against the latter, except such as the defendant had; and as he is not permitted to place the garnishee in any worse condition than he would occupy if sued by defendant, it follows necessarily, that whatever defence the garnishee could urge against an action by the defendant, for the debt in respect of which he is garnished, he may set up in bar of a judgment against him as garnishee.

The garnishment freezes the mutual debts and credits of the garnishee and the judgment debtor at a point in time.

Wenneker argues that, if the setoff is allowed, it will be possible for banks to purchase obligations of their customers, perhaps at a discount, in order to set them off against deposits. We do not find this professed fear sufficiently disturbing to justify an alteration of the law as we understand it. Here there is no suggestion that the bank did not acquire its claims against PMG in the normal course of business, as additional security for the Netherton note.

■ Wenneker also argues that the liquidation of garnishments may be indefinitely delayed if trial is required as to issues between the garnishee and the judgment debtor. It would not be appropriate to deny a right of setoff simply because that right might be contested. The garnishor has no equity in recovering more than the garnishee owes the judgment debtor. Catching something by garnishment process is a fortuitous event.

2. *Iler v. Midland National Bank*, 69 Mo.App. 64 (1897); *Adelstein v. Jefferson Bank and Trust Co.*, 377 S.W.2d 247 (Mo.1964); *Prince v. West End Installation Service, Inc.*, 575 S.W.2d 831 (Mo.App.1978).

It follows that the bank is entitled to set off its matured claims against the deposits reached by the garnishment.

### 2. Future Installments of Rent

■ The bank also claims a right to set off rent accruing after the service of the garnishment, relying on language of the "written depositor's contract" (commonly called "signature card") signed by PMG, as follows:

> Bank has a security interest in any monies in this account or any other now or hereafter in possession of Bank for the payment of any indebtedness or liability now or hereafter owing the Bank by both or either.

We do not believe that this language is sufficient to allow a setoff of installments of rent not yet due when the garnishment is served. As has been said earlier, the garnishment causes the striking of a balance. The language "now or hereafter" speaks as of the time the depositor's contract was signed, and allows the bank a lien on installments of rent as they come due, but is not sufficient to defeat the right of the garnishor to reach the net amount due the judgment debtor at the time of service. Future installments of rent were neither "indebtedness" nor "liability" at the time the garnishment was served. Numerous cases hold that there may be setoff only of matured demands.[3] Under these authorities future installments of rent may not be set off. Our holding of course does not relieve PMG of such liability as it may have to the bank for these installments. We deal here only with the question of setoff.

We express no opinion as to the right of setoff of a note due on demand, or as to the effect of an acceleration clause.[4] We simply hold that the contractual language in this case is not sufficient to justify the setoff of future installments of rent.

### 3. The Effect of Payment of Checks

■ The stipulation shows that the bank paid two small checks of PMG which were presented after the service of the garnishment, one in the amount of $331.66 on July 13, 1989 and one in the amount of $120.00 on July 17, 1989. Two checks presented later were not honored. Wenneker argues that the bank, by paying the two checks, waived its right of setoff, citing numerous authorities.[5]

The stipulated facts do not establish the affirmative claim of waiver, which is consistently defined in our cases as the "intentional relinquishment of a known right."[6] In the authorities relied on the courts appear to have sensed a deliberate purpose on the part of the garnishee of aiding the judgment debtor by ignoring the garnishment. Where the bank appears simply to have been careless in paying checks drawn on a garnished account, other courts have not found waiver.[7] The turndown of two

**3.** *Adelstein, supra* at 251; *Roosevelt Federal Sav. & Loan Ass'n v. First Nat. Bank of Clayton,* 614 S.W.2d 289, 292 (Mo.App.1981); *Prince, supra* at 832–33 (Mo.App.1978); *Kaw Valley State Bank & Trust v. Commercial Bank of Liberty, N.A.,* 567 S.W.2d 710, 712–13 (Mo.App.1978).

**4.** *See Brown v. Maguire's Real Estate Agency,* 343 Mo. 336, 121 S.W.2d 754, 759 (Mo.1938); *Herd v. Ingle,* 713 S.W.2d 887, 890 (Mo.App. 1986); *Frierson v. United Farm Agency, Inc.,* 868 F.2d 302, 303–4 (8th Cir.1989).

**5.** *Michigan Carpenter's Council Pension Fund v. Smith & Andrews Const. Co.,* 681 F.Supp. 1252 (E.D.Mich.1988); *First Bank of Whiting v. Samocki Bros. Trucking Co.,* 509 N.E.2d 187 (Ind. App.1987); *United Seeds, Inc. v. Eagle Green Corp.,* 223 Neb. 360, 389 N.W.2d 571 (1986); *Prudential Loan & Trust Co. v. Metzler,* 66 Or. 224, 133 P. 1191 (1913); *Herd v. Ingle,* 713 S.W.2d 887 (Mo.App.1986).

**6.** *Bartleman v. Humphrey,* 441 S.W.2d 335, 443 (Mo.1969).

> " 'Waiver' has been defined as an intentional relinquishment of a known right, on the question of which intention of the party charged with waiver is controlling and, if not shown by express declaration but implied by conduct, there must be a clear, unequivocal, and decisive act of the party showing such purpose, and so consistent with intention to waive that no other reasonable explanation is possible."

*See also Lucas Hunt Village Co. v. Klein,* 358 Mo. 1054, 218 S.W.2d 595, 599 (1949).

**7.** *Smith v. Crocker First Nat. Bank of San Francisco,* 152 Cal.App.2d 832, 314 P.2d 237 (1957); *Killette v. Raemell's Sewing Apparel, Inc.,* 93 N.C.App. 162, 377 S.E.2d 73 (1989). *See also Bartleman, supra* and *Lucas, supra.*

later checks, after having paid the first two presented after the service of the garnishment, is more probative of carelessness than of waiver. The bank, however, must account to the garnishor for the proceeds of the improperly paid checks.

The judgment is reversed and the case is remanded with directions to enter a new judgment allowing the bank to set off the indebtedness due it from PMG for rent and related expenses as of July 12, 1989, less $451.66 on account of the two checks improvidently paid.

ROBERTSON, C.J., RENDLEN, COVINGTON and HOLSTEIN, JJ., and HIGGINS and WASSERSTROM, Senior Judges, concur.