137 Ill. App.3d 992 (1985)
484 N.E.2d 1154
In re M.B. et al., Minors (The People of the State of Illinois, Petitioner,
v.
M.B. et al., Respondents-Appellees; The Daily Pantagraph, Petitioner-Appellant).
No. 4-84-0673.
Illinois Appellate Court  Fourth District.
Opinion filed October 17, 1985.
*993 Thomas N. Jacob & Associates, of Bloomington (Thomas N. Jacob, of counsel), for appellant.
Daniel D. Yuhas and Janet Sinder, both of State Appellate Defender's Office, of Springfield, for appellees.
Jack C. Landau and Jane E. Kirtley, both of The Reporters Committee for Freedom of the Press, of Washington, D.C., for amicus curiae.
Order vacated in part.
JUSTICE WEBBER delivered the opinion of the court:
This appeal presents a nettlesome question of the first amendment rights of the press versus the confidentiality provisions of the Juvenile Court Act.
Petitions for adjudication of wardship were filed in the circuit court of Woodford County naming the respondents in the instant case, M.B., a 14-year-old female, and M.[C.]B., a 12-year-old female. The latter case has been disposed of in this court and sets forth in detail the factual basis for the petitions. (In re M.B. (1985), 133 Ill. App.3d ___ (Rule 23 order).) Suffice it to say for our purposes here, the two minor respondents committed almost unbelievable acts of cruelty upon a two-year-old infant for whom they were baby-sitting. This occurred in Minonk, a small community in Woodford County. At least some of the underlying facts became known in the community, whether through gossip or otherwise, and apparently public indignation reached a high pitch. The sensational nature of the charges engendered widespread interest in the various news media in central Illinois.
On July 24, 1984, on the State's motion, the trial court placed both minors in the temporary custody of the Illinois Department of Children *994 and Family Services, and they were placed in a Peoria juvenile facility.
On August 2, 1984, a preadjudicatory hearing was held. On motion of the minors, the trial court then entered a protective order as follows:
"As a result of the unusually sensitive nature of this case, the apparent public interest in these proceedings and the reports of repeated telephonic threats against the physical safety of the juvenile, the Court has concluded that the statutory confidentiality of the proceedings and the identity of the participants should be maintained through specific court order to all persons allowed to be present during further hearings. The following Protective Order pursuant to Chapter 37, Section 705-5 applies to any person who appears as a party and to any news media representative who desires to attend and to the organization he or she represents. This Order includes any such representative and organization that obtains a notice of future hearings.
1. Notice of further hearings will be provided by mail only to statutory parties in interest. News media may receive copies of such notice by requesting the same in person from the Clerk and provide a receipt for such notice.
2. No person covered by this Order shall discuss any information obtained from any further hearing with any other person other than their legal counsel with the exception of counsel in the course of their investigation. No party to this proceeding may discuss the facts of the alleged occurrence or offense with any other person other than their counsel or counsel in the course of their investigation (including their authorized investigator(s).).
3. The news media are specifically prohibited from revealing directly or indirectly the identity of the minor or the minor victim.
4. The right of the news media to otherwise report the proceedings is not intended to be restricted, at this time, by this Order.
5. Information as to the date, time and location of further hearings may not be disseminated, but are provided only to allow attendance by authorized parties."
On August 7, 1984, various news media, Bloomington Broadcasting Corporation, d/b/a radio stations WJBC and WBNQ; Chronicle Publishing Company, d/b/a The Daily Pantagraph (herein Pantagraph); and Peoria Journal Star, Inc., filed motions to vacate the protective order. Since the Pantagraph is the only appellant in the instant case, our comments *995 will be confined to its motion and subsequent proceedings. The motion alleged that the order exceeded the trial court's authority under the Juvenile Court Act and was an unconstitutional prior restraint on the freedom of the press. On August 17, 1984, the trial court entered some findings of fact and a memorandum opinion. It denied the motions to vacate and added to its prior order: "Information as to the placement location of the minor may not be disseminated." The Pantagraph filed its notice of appeal in this court on September 17, 1984.
Meanwhile, the Pantagraph and the other media mentioned above applied to the Illinois Supreme Court for a writ of prohibition to compel the trial court to vacate its protective order. On September 11, 1984, the court denied the motion for the writ with Justices Ryan, Underwood, and Simon dissenting. Thereafter, the same parties filed an application for stay with the United States Supreme Court. That was denied by that court on November 5, 1984, with Justices Brennan, Marshall, and Blackmun dissenting.
In this court the trial judge filed a motion to strike himself as an appellee in the instant case. The motion was allowed by this court on October 30, 1984, and thereafter this court appointed the State Appellate Defender to represent the minors in the instant appeal, although under the circumstances we are concerned only with the protective order, not the merits of the case. The Reporters Committee for Freedom of the Press asked leave to file a brief as amicus curiae, and that motion was allowed.
Two preliminary, but interrelated and significant, questions have been raised by this court sua sponte: the standing of the Pantagraph to appeal and the jurisdiction of this court to entertain an appeal from what appears to be a collateral order. We requested and obtained supplemental briefs on the matter.
 1 There appears to be no direct authority in this State on the subject of the standing of the Pantagraph to bring the appeal, nor on the appealability of the order, under the circumstances of this case. There are many cases wherein contempt has been used as a vehicle to test orders which are collateral to the principal action. (See People ex rel. General Motors Corp. v. Bua (1967), 37 Ill.2d 180, 226 N.E.2d 6, concerning pretrial discovery orders.) However, the Pantagraph has argued, and we agree, that this is a distasteful method. Furthermore, the element of damage must be considered. In testing a pretrial order concerning discovery, or in compelling a witness to testify, by means of contempt (and many such cases are contrived), the only damage is that of delay which generally is not irreparable. In contrast, in the instant case if the Pantagraph published the prohibited material in order to *996 test the protective order, the damage, if any, could not be repaired should it ultimately be determined that the order was proper. No means would exist by which the Pantagraph could purge itself of the contempt; in the other cases, the witness can do so by testifying or producing the demanded discovery materials, if the contempt order is upheld.
This type of case was discussed by the supreme court in People ex rel. Scott v. Silverstein (1981), 87 Ill.2d 167, 429 N.E.2d 483. There a newspaper reporter (not a party to the action) was subpoenaed to produce certain documents; he filed a motion to quash the subpoena under the Reporter's Privilege Act (Ill. Rev. Stat. 1979, ch. 51, par. 111 et seq., now codified in the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 8-901 et seq.)). The circuit court denied the motion and appeal was taken to the appellate court, which found the order final and appealable under Supreme Court Rule 301 (87 Ill.2d R. 301). The supreme court reversed, holding that the reporter had the privilege either to obey the order or stand in defiance of the court. If contempt were imposed, the order would be final and appealable. We note that the statute there involved provided expressly for contempt as a remedy.
In the instant case, the Pantagraph had no such facile choice. There would be no way to restore the status quo ante once publication of the prohibited material had been made. Appeal was the only civilized method.
The Federal courts appear to have a more liberal treatment of this question. Collateral matters there are deemed to be a separate proceeding. For example, in United States v. Gurney (5th Cir.1977), 558 F.2d 1202, news reporters were prohibited from examining certain documents in a criminal case. They were held to have standing to appeal. No such broad doctrine exists in Illinois procedure, and we could not countenance one in the absence of a supreme court rule on the subject.
Nonetheless, in a case such as this, where fundamental constitutional rights are involved, we believe that the right to appeal without being held in contempt must be deemed to exist. In Chas. Ind Co. v. Cecil B. Wood, Inc. (1965), 56 Ill. App.2d 30, 43, 205 N.E.2d 786, 792, it was said:
"Appeals are * * * limited to those authorized, but where doubt exists as to the right of appeal, such questions should be resolved in favor of the appellant."
We note at the outset that the Pantagraph was not a formal party to the juvenile litigation. However, it did file a motion to vacate the *997 protective order and that motion was denied by the trial court. Such order of denial was obviously directed squarely at the Pantagraph and the others who filed similar motions. In this sense, the Pantagraph is not an interloper but was specifically aggrieved by the trial court's order.
In Shannon v. Stookey (1978), 59 Ill. App.3d 573, 577-78, 375 N.E.2d 881, 884, it was said:
"Generally a nonparty to a cause of action can obtain review if it is shown that his interest in the subject matter thereof has been prejudiced or aggrieved by the judgment complained of; that is, a legal right has been invaded or a pecuniary interest is directly and not merely indirectly affected. (McDonald's Corp. v. Blotnik, 28 Ill. App.3d 732, 328 N.E.2d 897.)"
In Blotnik the court said:
"A nonparty to a cause of action is prejudiced or aggrieved in the legal sense that permits him to appeal from a final order therein when a legal right is invaded by the order complained of, or his pecuniary interest is shown to be directly and not merely indirectly affected." 28 Ill. App.3d 732, 734, 328 N.E.2d 897, 899.
In both Shannon and Blotnik the purported appeal was taken from a final and appealable order, but we perceive no reason why the same rationale should not apply to an interlocutory order which is appealable. As will later be demonstrated, we are of the opinion that the interlocutory order here was appealable.
There is no "pecuniary interest" involved here, but clearly the other prong of the test, invasion of a legal right, has been met. The Pantagraph's first amendment rights have been prejudiced by the protective order. We hold that the Pantagraph has standing to bring this appeal.
 2 We turn next to the question of the nature of the order. There are three broad classes of appealable orders. First: final orders which dispose of the entire case (Ill. Const. 1970, art. VI, sec. 6, and Supreme Court Rule 301 (87 Ill.2d R. 301)). Second: final orders which do not dispose of the entire case. These are governed by Supreme Court Rule 304 (87 Ill.2d R. 304) and are subdivided into two categories: (a) those requiring a special finding and (b) those not requiring such finding. Third: interlocutory appeals as of right. These are governed by Supreme Court Rule 307 (87 Ill.2d R. 307). There are other appeals by permission, but we are concerned here only with the classes just mentioned. Clearly in the instant case we are not concerned with a final order, and if the protective order is to be appealable, thus conferring *998 jurisdiction on this court, it must fall within one of the several categories of interlocutory appeals as of right.
In our opinion the protective order by its nature is prohibitory. A fair reading of the order can reach no other conclusion. It applies specifically to the news media and directs that they not discuss any information obtained at any further hearing except with counsel; that they not reveal directly or indirectly the identity of the minor or the victim; that they not disseminate any information as to date, time or location of further hearings; and that they not reveal the placement of the minor. In substance and essence the order is an injunction. The only thing lacking is the specific label.
We are thus of the opinion that the order is appealable under Supreme Court Rule 307(a)(1), which provides:
"An appeal may be taken to the Appellate Court from an interlocutory order of court:
(1) granting * * * or refusing to dissolve or modify an injunction." (87 Ill.2d R. 307(a)(1).)
As has been indicated, the trial court granted the protective order on motion of the minor and refused to vacate it on motion of the Pantagraph. Courts will look to the substance of an order, not to its form, in determining whether in fact it is an injunction. First National Bank v. Powers (1969), 107 Ill. App.2d 470, 246 N.E.2d 838.
Analogous to the instant situation are a variety of cases in which stay orders of litigation in the circuit court and direction to arbitration have been held to be the generic equivalent of injunctions. See Allied Contracting Co. v. Bennett (1982), 110 Ill. App.3d 310, 442 N.E.2d 326; Property Management, Ltd. v. Howasa, Inc. (1973), 14 Ill. App.3d 536, 302 N.E.2d 754; Applicolor, Inc. v. Surface Combustion Corp. (1966), 77 Ill. App.2d 260, 222 N.E.2d 168.
We have jurisdiction pursuant to the Rule.
 3 Turning finally to the merits of the controversy, we find that the trial court exceeded its authority in making its order so broad. The order was purportedly entered pursuant to section 5-5 of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 705-5). This section provides for protective orders but is limited to persons before the court on original and supplemental petitions. The Pantagraph was not such a person. The order must find its validity, if at all, under section 1-20(6) of the Act (Ill. Rev. Stat. 1983, ch. 37, par. 701-20(6)), which provides as follows:
"The general public except the news media and the victim shall be excluded from any hearing and, except for the persons specified in this Section, only persons, including representatives *999 of agencies and associations, who in the opinion of the court have a direct interest in the case or in the work of the court shall be admitted to the hearing. However, the court may, for the minor's protection and for good cause shown, prohibit any person or agency present in court from further disclosing the minor's identity."
The last sentence was added by an amendment in 1977, and so far as we can determine its constitutionality has never been challenged. In the instant case, the Pantagraph makes no facial attack upon it but states in its brief, "Assuming arguendo the constitutionality of the statutory provision allowing the Court to prohibit disclosure of the minor's identity, the Protective Order here goes well beyond what is authorized by the Statute." We agree with that Statement. There is a heavy constitutional presumption against prior restraints on the press. The statute permits only the suppression of the minor's identity. Anything beyond that, and the order here goes far beyond, is suspect and subject to strict scrutiny. Nebraska Press Association v. Stuart (1976), 427 U.S. 539, 49 L.Ed.2d 683, 96 S.Ct. 2791; Cooper v. Rockford Newspapers, Inc. (1975), 34 Ill. App.3d 645, 339 N.E.2d 477.
In its findings the trial court noted that the identity and location of the minor had already been disseminated by news organizations other than the Pantagraph at the time the protective order was entered. The court also noted that the identity of the minor was probably a matter of common knowledge in a community as small as Minonk. Furthermore, on July 25, 1984, one day after the juvenile petitions were filed, a criminal information was filed in the circuit court of Woodford County naming one of the minors as a victim of sexual abuse by an adult who was present during the time in which the minors were abusing the infant.
The constitutional issue in this case is controlled by the decisions of the United States Supreme Court in Smith v. Daily Mail Publishing Co. (1979), 443 U.S. 97, 61 L.Ed.2d 399, 99 S.Ct. 2667, and Oklahoma Publishing Co. v. District Court (1977), 430 U.S. 308, 51 L.Ed.2d 355, 97 S.Ct. 1045. In Smith the court struck down a West Virginia statute which provided for criminal sanctions for the truthful publication of an alleged juvenile delinquent's name. The court found that the asserted State interest in protecting the anonymity of a minor offender in order to further rehabilitate him did not justify prohibiting publication. Further, even assuming the statute served a State interest of the highest order, the statute did not accomplish the stated purpose in that it did not prevent electronic broadcast of the juvenile's name or publication other than in "newspapers."
In Oklahoma Publishing the court held, in a per curiam decision, *1000 that a State court's pretrial order enjoining publication of the name or photograph of a juvenile charged with murder violated the first amendment. The juvenile proceedings were in fact open to the public, and the information was lawfully obtained by news media, although a State statute provided for closed juvenile proceedings, unless opened by court order.
In the instant case, as noted by the trial court, the identity and location of the minors had been widely disseminated prior to the entering of the restraining order. The reported telephonic threats had been made to the juvenile detention facility by a person or persons who obviously already knew the minors' identity and location. It appears therefore that the order was ineffective in accomplishing its stated purpose, i.e., the protection of the minors' physical welfare. The protective order did not cover news media who did not attend the juvenile proceedings but obtained the information independently. Further, the identity of at least one minor was a matter of public record by virtue of the criminal information filed a day after the juvenile petitions were filed.
The concern for the safety of the minors is of course understandable in view of the reported threats. However, a juvenile charged with such crimes may often be subject to threats of retribution. While protection of the minors' safety may be a State interest of the "highest order," it does not appear to justify the prior restraint imposed here. The trial judge based the order partly on his finding that the minors could not be adequately protected at their juvenile facility or in traveling to and from court hearings. It seems doubtful, however, that some alternative measures would not have been sufficient for the protection of the minors.
In summary, the protective order went beyond what was authorized by statute and constituted an unlawful prior restraint on the Pantagraph in violation of the first amendment to the United States Constitution, as applied to the States through the fourteenth amendment and in violation of section 4 of article I of the 1970 Illinois Constitution.
The order of the circuit court of Woodford County is therefore vacated except for the provision relating to the identity of the minor.
Order vacated in part.
GREEN, P.J., and TRAPP, J., concur.