THE STREATOR NATIONAL BANK, Plaintiff-Appellant, v. BERNARD ARQUILLA *et al.*, Defendants-Appellees.

Third District   No. 3—85—0004

Opinion filed November 19, 1985.

John A. Hayner, of Warren, Hayner & Baxter, P.C., of Ottawa, Frank J. Harrison, of Streator, and James E. Spiotto, Ann Acker, and Maureen W. Fairchild, all of Chapman & Cutler, of Chicago, for appellant.

August A. Grundei, of Chicago, and Craig Armstrong, of Ottawa, for appellees.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, the Streator National Bank, appeals an order of the circuit court of La Salle County dismissing their complaint against defendants, Bernard and Ruth Arquilla, to recover on a guaranty of payment of Illinois Industrial Revenue Bonds issued by the city of Streator.

Industrial revenue bonds (IRBs) are a special category of revenue bonds which have been defined as such by the Internal Revenue Code for purposes relating to the exemption of interest on the bonds from Federal Income Tax (IRC sec. 103(b)). There are two broad classifications of municipal bonds—general obligation bonds and revenue bonds. General obligation bonds are obligations backed by the full faith and credit (*i.e.*, taxing power) of the entity that is the issuer of the bonds. In other words, the issuing governmental entity has the power to levy additional taxes to pay principal and interest due on general obligation bonds.

Revenue bonds, on the other hand, are not considered to constitute a liability of the issuer because they are not secured by the credit of the issuer. Instead, revenue bonds are payable only from a special

fund, such as the revenues of the particular project or facility that is being financed by the bond proceeds.

Industrial revenue bonds (IRBs) are a species of municipal revenue bonds. Like other forms of municipal revenue bonds, IRBs do not constitute an obligation of the public authority issuing them. Rather than being secured by the revenues of a publicly owned project, however, they are secured solely by the credit of the corporation that will use the IRB proceeds.

The IRBs in question were issued by the city of Streator (the city) to finance reconstruction and equipment modernization of the Streator Brick Plant (the project) and are payable from the revenues generated by the project.

The financing commenced when Streator Brick, Inc. (the company), seeking to reconstruct and modernize equipment at the project, applied to the city in order to obtain financing. The city of Streator, the municipality in which the project is located, in order to create job opportunities for its local residents, issued the IRBs and then sold the bonds to the Streator National Bank (the bank). The bonds were issued and the proceeds from the sale of the bonds were paid over by the city to the bank to hold and disburse to the company for use in reconstructing and modernizing the project.

The city did not make an outright loan to the company; instead, the city's financing activity was structured as a sale and leaseback, whereby the company used the bond proceeds to reconstruct and modernize the project and conveyed legal title to the city in exchange for a leaseback from the city for the term of the bonds. The rentals to be paid by the company under the lease were equal to the payments that the city was obligated to make on the bonds. As security for the bonds, the city, pursuant to an indenture, granted to the bank a mortgage and security interest in the project land, building and equipment, as well as essentially all of its right and interest as lessor under the lease (including the right to receive rentals due thereunder).

Under the Industrial Building Revenue Bond Act (Ill. Rev. Stat. 1983, ch. 85, par. 871 *et seq.*), the city is obligated to pay the bond issue solely from the revenues it derives from the company in connection with the project. Except to the extent of making these revenues available to the bank, the city has no pecuniary liability whatsoever; hence, the bonds are without recourse to the city. In substance, the IRB cannot be deemed to constitute a debt, liability, or obligation, or a pledge of the faith and credit of the city, Illinois, or any other political subdivision of Illinois. The city is merely a conduit, and since issuance and sale its role has been generally passive.

Because under the Illinois law borrowing evidenced by IRBs is not treated as debt of the issuing community, local governments will generally cooperate with industrial developers who request that such bonds be issued. The primary significance of the city, therefore, is that the interest income to the bondholders on the IRBs issued by it is exempt from Federal tax, whereas interest income to holders of bonds issued directly by the company would be subject to taxation.

Here, as we indicated, the IRBs were primarily secured by the assignment of the revenues payable to the city by the company. These payments were assigned by the city to the bank pursuant to the indenture and, in fact, were to be paid by the company directly to the bank for remittance to the bondholders. In addition to the pledge of revenues, and the aforementioned mortgage on the project, another significant security device was used in this IRB financing—a guaranty of payment of the IRBs.

The guaranty of payment of the IRB, which was obtained from the defendants, major stockholders of the company, guaranteed payment to the bank for distribution to the bondholders amounts necessary to satisfy the unpaid principal and interest due on the IRBs. Here, the guarantors covenanted to honor the guaranty without the requirement that the bank first exhaust other available remedies. Hence, after default in payment by the company, the bank informed defendants of the default and requested that defendants make payments pursuant to their guaranty. Thereafter, the bank brought suit in the trial court below seeking to enforce defendants obligations pursuant to the terms of their guaranty with the bank.

Defendants successfully argued to the trial court that the bank had failed to allege a default under the terms of the bond resolution by the issuer as primary obligor so as to trigger the secondary liability of the defendants pursuant to the terms of the guaranty. From the pleadings, stipulations, and its finding of fact, the court made various conclusions of law, which in summary may be said to have been a holding that a guaranty should be strictly construed, and that this guaranty obligated the defendants only to make the payments required to be made by the issuer, the city of Streator. We disagree.

The agreement of guaranty (bearing the signatures of the defendants) states that it is made on May 6, 1980; that it is between the guarantors Bernard and Ruth Arquilla and the Streator National Bank; that the city of Streator will issue its IRB in the amount of $1,850,000 to defray the cost of reconstruction and modernization of the Streator Brick Plant for the benefit of Streator Brick Systems, Inc.; the same to be guaranteed by Bernard and Ruth Arquilla person-

ally as a condition to the bank's purchase of the bond; and that it is agreed:

(1) The agreement shall be an unconditional guaranty,

(2) The liability of guaranty shall not be affected by any disposition of the bond,

(3) There shall be no obligation on the part of the bank to resort to the company for payment,

(4) The agreement shall be a guaranty of payment regardless of the enforceability of the bond,

(5) The bank may without notice sell, assign or transfer the bond, and that all successors in interest shall have the right to enforce this agreement, and

(6) The agreement shall be construed according to the laws of the State of Illinois.

The contract of guaranty involved in this case contains broad assumptions of liability on the part of the guarantors. The guaranty expressly states that it is of the bond and that it is given as a condition to the bank's purchase of the bond. Defendants contend that the city is the primary obligor under this guaranty agreement—that the city is only obligated to make payments to the extent payments are received from the company, and that because the company failed to make any payments, that they too are relieved of their obligations under the guaranty to make payments. Under defendants' analysis, if the company failed to make the required payments and it became necessary to look to the guarantors, it was impossible for their liability to be triggered under the terms of the guaranty. However, the record does not support defendants' contention that this guaranty contract guarantees only the obligation of the issuer of the bond. All parties were on notice of the fact that there would never be any pecuniary liability against the city of Streator, and that the bond purchasers would be able to look only to the revenues of the project and other security.

■■ It is best to begin our analysis with the rules of interpretation and construction of guaranty agreements. The general rule governing construction of a contract of guaranty is well stated in *United States Gypsum Co. v. Bernstein* (1912), 169 Ill. App. 474, 476;

"[A guaranty] contract must be construed strictly, but where there is some uncertainty in its terms the court may 'resort to the same aids and invoke the same canons of interpretation which apply in case of other contracts.' "

We have examined the authorities cited by the parties and conclude that the contractual provisions involved must stand on their own language, as no cases have been brought to our attention similar

to the facts of this guaranty transaction. The only guidance afforded is found in the accepted rule of interpretation which requires that the agreement be given a fair and reasonable interpretation based upon a consideration of all its language and provisions.

■ The object of judicial construction of a written instrument is to ascertain the true intent of the parties. When this rule is applied in the present case, it is our opinion that the parties did not intend the construction adopted by the trial court. We believe it would be both narrow and unreasonable to hold that the words "the guarantors *** guarantee *** payment to the bank of the principal of and interest on the bond" refer to the nonexistent obligation of the issuer alone. In construing the intention of the parties with respect to financing arrangements of this sort, we note that IRBs are commonly secured by an unconditional guaranty of payment of the IRBs obtained from a parent or major stockholder of the company. Although the specific terms of guaranty agreements vary, the guarantor at a minimum agrees to pay to the bondholders amounts necessary to satisfy the unpaid principal and interest due on the IRBs when insufficient funds are made available to make those payments. Dobbs & Joslin, *Bankruptcy Symposium*, 84 W. Va. L. Rev. 573 (1982).

It is contended by the defendants that *Kreizelman v. Stevens* (1942), 381 Ill. 73, 44 N.E.2d 873, is decisive of the instant case. We find it is not. Unlike *Kreizelman*, our defendants did not merely guaranty the performance of the issuer. Accordingly, we hold that although the bonds in question do cast burdens upon the city with reference to their issuance and payment, thereby charging the city with a formal, nominal, or limited obligation, it is the company who assumed the direct, unlimited obligation on the bond.

For these reasons it is our conclusion that an interpretation of the guaranty contract which would render the agreement meaningless was not the intent of the contracting parties. Accordingly, we hold that the necessary elements for plaintiff's cause of action are present, and with the admissions flowing from the motion to dismiss, it is sufficient.

Judgment reversed and cause remanded for further proceedings.

SCOTT and WOMBACHER, JJ., concur.