BANK OF ASPEN, Plaintiff-Appellee and Cross-Appellant, v. FOX CART-AGE, INC., *et al.*, Defendants (Batavia Bank, Citation Respondent-Appellant and Cross-Appellee.)

Second District No. 2—86—0695

Opinion filed July 2, 1987.—Rehearing denied August 6, 1987.

David Drenk and Douglas Drenk, both of Drenk & Drenk, Ltd., and Louis A. Varchetto, of Guerard, Kalina, Musial, Ulrich, & Varchetto, both of Wheaton, for appellant.

Lambert M. Ochsenschlager, Wayne F. Weiler, and James C. James III, all of Reid, Ochsenschlager, Piccony & Weiler, of Aurora, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

This case involves an appeal by Batavia Bank, a third-party citation respondent, and a cross-appeal by the plaintiff. The plaintiff, Bank of Aspen (hereinafter referred to as Aspen), made a loan to the judgment debtor, David L. Thomas, in 1981. Thomas eventually defaulted on the loan, and on April 19, 1984, a Colorado court entered judgment against him and in favor of Aspen. Aspen recorded that judgment in Illinois on December 18, 1984. The Illinois judgment included an order enjoining Thomas from transferring his property. On January 7, 1984, prior to either judgment, however, Thomas, as president and sole shareholder of Roselaine Construction, Inc. (hereinafter Roselaine), borrowed money (in an apparent refinancing of an earlier debt) from Batavia Bank (hereinafter Batavia) and pledged 1,430 shares of Batavia Concrete, Inc., stock (the stock) as security for that loan. Batavia acquired possession of the stock certificate on that date.

Batavia made an additional loan to Roselaine on December 22, 1984, which was secured by an additional security interest in the stock. When Roselaine defaulted on the Batavia loans on September 20, 1985, Batavia foreclosed on the stock and prepared to sell it, believing it had a superior right to the stock as a secured creditor than Aspen had. Batavia informed Aspen of its intention to sell the stock.

On September 30, 1985, one day before the sale was to take place, Aspen served a citation to discover assets on Batavia pursuant to section 2—1402 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1983, ch. 110, par. 2—1402). The citation was issued by the court clerk and included language prohibiting Batavia from transferring or otherwise disposing of the judgment debtor's property. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1402(d)(1).) The trial court, over Batavia's objections, permitted the citation and its transfer prohibition to remain in effect through a trial on the merits held on December 23, 1985, and until it reached its decision on May 16, 1986. At that time, the court denied Aspen's request to have the stock turned over to it, finding that Batavia's interest was superior. It also dissolved the citation against Batavia with respect to the stock on that date.

Batavia has contended since the citation was issued that it was an inappropriate procedure and, effectively, an injunction. Prior to the trial held on December 23, 1985, Batavia moved the trial court to quash the citation (alternately calling it a motion to dissolve the temporary injunction). The court refused, and Batavia appealed that decision on the theory that an interlocutory appeal was appropriate pursuant to Supreme Court Rule 307 (87 Ill. 2d R. 307(a)(1)), which allows immediate appeal from a trial court's refusal to dissolve an injunction. This court held that the court's order denying Batavia's motion was "not encompassed within the Rule 307 provision," and dismissed the appeal. *Bank of Aspen v. Fox Cartage, Inc.* (1986), 141 Ill. App. 3d 369, 373.

In its instant appeal, Batavia contends that, notwithstanding the inapplicability of Rule 307, the citation was an inappropriate remedy which effectively enjoined it from exercising its right to sell its property without the procedural due process protections guaranteed by the United States Constitution. (U.S. Const., amend. XIV.) In addition, it claims that the injunctive relief was wrongfully allowed and that it is therefore entitled to recover damages from Aspen under section 11—110 of the Code. (Ill. Rev. Stat. 1983, ch. 110, par. 11—110.) In its cross-appeal, Aspen contends that the trial court erred in finding that Batavia had a superior interest in the stock than Aspen had.

## I

We will first consider Aspen's arguments on cross-appeal concerning the relative rights of Aspen and Batavia to the stock.

On March 26, 1981, shortly after obtaining the loan from Aspen, Thomas and his wife created separate living trusts and purported to divide their assets between them. Thomas listed the stock as an asset to be transferred to his own trust. On October 20, 1981, Thomas assigned his beneficial interest in his trust to his wife "as collateral" in exchange for her agreement to use the assets in her trust to guarantee an unrelated bank loan to Roselaine. Aspen argues that these conveyances were fraudulent in law.

■■■ The elements of fraud in law are: (1) a voluntary gift; (2) a preexisting or contemplated indebtedness against the donor; and (3) the donor's failure to retain property sufficient to pay his indebtedness. (*Mills v. Susanka* (1946), 394 Ill. 439, 448; *Kardynalski v. Fisher* (1985), 135 Ill. App. 3d 643, 647; *Anderson v. Ferris* (1984), 128 Ill. App. 3d 149, 153.) Where the elements of fraud in law are established, fraud is presumed, and the donor's intent is immaterial. (*Anderson v. Ferris* (1984), 128 Ill. App. 3d 149, 153.) A fraudulent conveyance which defeats the rights of creditors may be set aside. *Kardynalski v. Fisher* (1985), 135 Ill. App. 3d 643, 647.

■ Although the evidence may arguably support the inference that the March 26, 1981, transactions were fraudulent in law, that result would have no effect on the relative rights of Aspen and Batavia to the stock. Aspen apparently argues that in creating the two trusts and dividing his assets between them, Thomas made a fraudulent gift of some of his property to his wife. The stock in question was not among the assets transferred, however, and setting aside the March 26 transaction would not affect its ownership. As to the October 20, 1981, transfer, the evidence supports the inference, apparently accepted by the trial court, that Thomas did not transfer the stock to Mrs. Thomas without reservation, but merely gave her a security interest in all of the assets in his trust. That transfer was supported by consideration—her agreement to guarantee a loan—and therefore cannot have been fraudulent in law, because no gift was made. (See *Mills v. Susanka* (1946), 394 Ill. 439, 448.) In any case, the trial court's conclusion is consistent with Aspen's position—that Thomas still owned the stock after the purported transfer.

■■ Similarly, Thomas' transfer of the security interest in the stock to Batavia was supported by consideration and could not have been fraudulent in law, but only fraudulent in fact (see *Gary-Wheaton Bank v. Meyer* (1984), 130 Ill. App. 3d 87, 94)—an entirely distinct le-

gal theory requiring the proponent to demonstrate a fraudulent intent. (*Third National Bank v. Norris* (1928), 331 Ill. 230, 234; *Tcherepnin v. Franz* (N.D. Ill. 1978), 457 F. Supp. 832, 836, *aff'd* (7th Cir. 1978), 570 F.2d 187, *cert. denied* (1978), 439 U.S. 876, 58 L.Ed. 2d 190, 99 S.Ct. 214.) Aspen produced no evidence of an intent to defraud. We therefore conclude that ownership of the stock was not affected by any fraudulent conveyance and summarily reject as unsupported Aspen's contentions that Batavia somehow participated in or had notice of a fraud. See, *e.g.*, *Cosley v. Steven Bruce Builders* (1985), 136 Ill. App. 3d 868, 872.

■■■ We also reject as unfounded Aspen's contention that Batavia engaged in some impropriety or made some unspecified admission with regard to the validity of its security interest by attempting to induce Thomas to sell the stock himself. The president of Batavia testified that, when Roselaine could not meet its loan payments, Batavia encouraged Thomas to sell the stock and pay the proceeds to Batavia, believing that would be simpler and more beneficial to the bank than foreclosing on the collateral. This testimony supports the trial court's decision. See *Susman v. Cypress Venture* (1982), 114 Ill. App. 3d 668, 675 (witnesses' credibility and the weight to be given their testimony are questions appropriately left to the trial court in nonjury cases); *Shanahan v. Schindler* (1978), 63 Ill. App. 3d 82, 93 (where the record supports several inferences, "a reviewing court must accept those which support the trial court's judgment").

■ Aspen argues that, in any event, Batavia's security interest did not attach on January 7, 1984, as Batavia claims. The Uniform Commercial Code—Secured Transactions (Ill. Rev. Stat. 1983, ch. 26, par. 9—101 *et seq.*) (hereinafter referred to as the UCC) provides that a security interest in collateral attaches and is enforceable against third parties when "the collateral is in the possession of the secured party pursuant to agreement ***; *** value has been given; and *** the debtor has rights in the collateral." (Ill. Rev. Stat. 1983, ch. 26, pars. 9—203(1), (2).) Batavia acquired possession of the stock from Thomas on January 7, 1984, and the record establishes that the bank gave valuable consideration for it. In addition, the UCC provides that "[w]here the debtor and the owner of the collateral are not the same person, the term 'debtor' means the owner of the collateral in any provision *** dealing with the collateral." (Ill. Rev. Stat. 1983, ch. 26, par. 9—105(1)(d).) It therefore requires only Thomas, not Roselaine, to have rights in the collateral. The record supports the trial court's conclusions that Thomas at all times had an interest in the stock and that Batavia's security interest therefore attached on January 7, 1984,

prior to Aspen's obtaining any judgment against Thomas.

Aspen additionally contends, however, that the loan instrument and guarantee do not effectively transfer a security interest in the stock to Batavia. On the face of the note, Roselaine is listed as the borrower, and the stock is listed as collateral. Thomas signed this portion over a signature line provided for "David L. Thomas, President." There are two provisions on the back of the form entitled "ADDITIONAL TERMS AND PROVISIONS" and "GUARANTY." Thomas signed the guaranty portion in his individual capacity. The face of the note expressly incorporates by reference "THE ADDITIONAL TERMS AND PROVISIONS ON THE REVERSE SIDE HEREOF," but does not mention the "GUARANTY." Aspen argues that the note thus fails to incorporate the guaranty agreement, which must be considered separately and strictly construed. The note, which Thomas executed only in his representative capacity, contains a description of the collateral, but the guaranty does not. Aspen concludes that Thomas therefore never transferred a security interest in the stock in his individual capacity as its owner and that Batavia is therefore only an unsecured creditor of Thomas. We disagree.

■■ ■ While guaranty contracts should be strictly construed (*Streator National Bank v. Arquilla* (1985), 138 Ill. App. 3d 163, 167), we note that the object of any judicial construction of a written instrument is to ascertain the parties' actual intent. (138 Ill. App. 3d 163, 168.) Here, both provisions are contained not only within a single document, but on opposite sides of a single page, and the guaranty provision refers to "the within note." Additionally, the document itself and the evidence presented indicate the parties' intent to have Batavia extend Roselaine a line of credit in exchange for its promise to pay $50,000 on demand and secured by Thomas' stock. There is simply no evidence of any contrary intention, and we conclude that the parties intended all of the provisions to be considered a single contract. (See *Nelson v. John B. Colegrove & Co. State Bank* (1933), 354 Ill. 408, 413 ("unless a contrary intention is manifested, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, are regarded as one instrument and will be read and construed together"); *Tepfer v. Deerfield Savings & Loan Association* (1983), 118 Ill. App. 3d 77, 80; *Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 63.) The trial court's conclusion that the instrument effectively gave Batavia secured creditor status with a claim to the stock superior to Aspen's was not against the manifest weight of the evidence.

## II

We next consider Batavia's appeal. Batavia argues that Aspen's use of supplementary proceedings pursuant to section 2—1402 of the Code (Ill. Rev. Stat. 1983, ch. 110, par. 2—1402) was an inappropriate way in which to restrain Batavia from selling the stock. In addition, it argues that the section violates the due process clause of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) when used to enjoin third-party citation respondents from selling property without notice or a hearing and without requiring the judgment creditor to post a bond as security for costs.

■■ Section 2—1402 authorizes a judgment creditor to commence supplementary proceedings against a third party for the purpose of discovering assets or income of the judgment debtor held by the third party, and of compelling the third party to surrender those assets or income to be applied toward satisfaction of the judgment. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1402(a); see also Supreme Court Rule 277 (87 Ill. 2d R. 277) (which prescribes the procedures applicable to supplementary proceedings).) The citation is issued by the clerk of the court at the judgment creditor's request (87 Ill. 2d R. 277(b)), and, if the creditor so elects, may be issued with a restraining provision prohibiting the third-party respondent, under pain of contempt, from transferring or disposing of any nonexempt property of the judgment debtor. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1402(d)(1).) The purpose of the restraint is to provide "a means of forestalling the judgment debtor or a third party from frustrating the supplementary proceedings before the judgment creditor has had an opportunity to reach assets *** in the possession of debtor or of a third party [citation]." (*Kirchheimer Brothers Co. v. Jewelry Mine, Ltd.* (1981), 100 Ill. App. 3d 360, 362.) However, the creditor need not file an affidavit or otherwise aver that the restraining language is necessary to protect its interests.

The section additionally provides that, when the respondent claims property discovered during supplementary proceedings, its rights "shall be asserted and determined pursuant to the law relating to garnishment proceedings." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1402(e).) The garnishment provisions permit the garnishee to assert its right to offset any claims it has against the judgment debtor. (Ill. Rev. Stat. 1983, ch. 110, par. 12—708.) The judgment creditor may challenge the garnishee's assertions, in which event "the court shall immediately, unless for good cause the hearing is postponed, proceed to try the issues." Ill. Rev. Stat. 1983, ch. 110, par. 12—711.

■■ In interpreting statutory language, the court should consider

the legislature's intent (*Maloney v. Bower* (1986), 113 Ill. 2d 473, 479) and the purpose the statute was designed to serve. (*Benjamin v. Cablevision Programming Investments* (1986), 114 Ill. 2d 150, 157.) Legislative commentary is often useful to a court attempting to ascertain the legislature's intent. *Schutzenhofer v. Granite City Steel Co.* (1982), 93 Ill. 2d 208, 212.

The Historical and Practice Notes to section 2—1402 indicate that the legislature intended the statute to be construed in the same manner as was the New York statute in a decision by the United States Court of Appeals for the Second Circuit. (Ill. Ann. Stat., ch. 110, par. 2—1402, Historical and Practice Notes, at 867 (Smith-Hurd 1983).) In that decision, Judge Learned Hand upheld the New York statute against a challenge alleging it to be unconstitutional because it permitted the clerk of the court to issue an injunction without a court order. (*Capitol Co. v. Fox* (2d Cir. 1936), 85 F.2d 97, *aff'd* (1936), 299 U.S. 105, 81 L. Ed. 67, 57 S. Ct. 57.) The legislative commentary quotes a portion of that decision, including the following:

> " 'If the statute affected to declare in advance of a hearing that the plaintiff's attorney might forbid the "third party's" transfer of any specific property under pain of contempt, there would indeed be much to say for that argument. It does not do so; it measures the extent of the prohibition by the judgment debtor's ownership of the property; the "third party" is forbidden to transfer only what property he owns, and cannot be punished without proof that any property thereafter transferred was the debtor's.' " (Ill. Ann. Stat., ch. 110, par. 2—1402, Historical and Practice Notes, at 867 (Smith-Hurd 1983), quoting *Capitol Co. v. Fox* (2d Cir. 1936), 85 F.2d 97, 101.)

Judge Hand thus found the restraining provision constitutional as to a third-party respondent, because it restricts that party only with respect to the judgment debtor's property. It "is not operative as to property of the third person, but is and can be made operative only as to property of the judgment debtor." (33 C.J.S. *Executions* sec. 370, at 686 (1942).) It is therefore not to be viewed as an injunction when directed to a third party (Ill. Ann. Stat., ch. 110, par. 2—1402, Historical and Practice Notes, at 867 (Smith-Hurd 1983)), because it does not restrict the third party's right to transfer its own property.

■■ In the instant case, however, Batavia claimed to have an ownership interest in the property—the immediate right to sell property it held as collateral on its debtor's default. (Ill. Rev. Stat. 1983, ch. 26, par. 9—504.) When a creditor forecloses on and takes possession of property subject to a security interest, following the debtor's

default, legal title passes to the creditor. (See *Kouba v. East Joliet Bank* (1985), 135 Ill. App. 3d 264, 268.) The debtor retains only "the right to surplus proceeds following sale of the collateral." (135 Ill. App. 3d 264, 268.) Here, Roselaine had defaulted, and Batavia had foreclosed on the collateral, arranged a sale of it, and notified Aspen of the pending sale before the citation was issued. In filing its emergency petition to quash the citation, Batavia brought these facts to the attention of the trial court.

Aspen, however, argued that it could establish that Thomas' fraudulent actions rendered his security agreement with Batavia void. The trial court continued the trial to permit Aspen to conduct discovery, leaving the citation and its restraining language in effect until its decision on the merits. For the reasons which follow, we conclude that the court erred in imposing the restraint on a third-party respondent claiming a proprietary interest in the property.

The Code itself is silent as to the effect of the citation's restraining language pending a hearing on the respondent's claim. Our research has disclosed no cases which deal directly with the issue where, as here, the court is vested with the authority to conduct a trial to determine whether the disputed property in fact belongs to the judgment debtor. (Ill. Rev. Stat. 1983, ch. 110, par. 12—711(a). But see *Rathers v. Kaplan* (1911), 138 N.Y.S. 1002 (holding that the restraining provision must be vacated where the third party claims to own the property because in that event the court is without authority to apply it toward satisfaction of the judgment); *National Bank v. Burns* (1891), 109 N.C. 105, 13 S.E. 871 (holding that third-party respondents should inform the court that they claim an interest in the property—the court then has the authority to forbid its disposition pending the appointment of a receiver, but it may not enjoin the third party with respect to its own property).) We recognize, however, that due process must be afforded to persons against whom garnishment and prejudgment attachment procedures are instituted. *North Georgia Finishing, Inc. v. Di-Chem, Inc.* (1975), 419 U.S. 601, 42 L. Ed. 2d 751, 95 S. Ct. 719; *Mitchell v. W. T. Grant Co.* (1974), 416 U.S. 600, 40 L. Ed. 2d 406, 94 S. Ct. 1895; *Fuentes v. Shevin* (1972), 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983; *Sniadach v. Family Finance Corp.* (1969), 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820.

In the two most recent such cases, the United States Supreme Court made clear that there is no fixed procedure which must be followed to satisfy due process of law (*Mitchell v. W. T. Grant Co.* (1974), 416 U.S. 600, 610, 40 L. E. 2d 406, 415, 94 S. Ct. 1895, 1901), and that prior notice and hearing are not always necessary (416 U.S.

600, 609-10, 40 L. Ed. 2d 406, 414-15, 94 S. Ct. 1894-95) where the statute has other, "saving characteristics." *North Georgia Finishing, Inc. v. Di-Chem, Inc.* (1975), 419 U.S. 601, 607, 42 L. Ed. 2d 751, 757-58, 95 S. Ct. 719, 722-23.

In *Mitchell*, the court upheld a Louisiana statute which permitted any installment seller/creditor to have property it had sold to the buyer/debtor sequestered pending resolution of the underlying suit. (*Mitchell v. W. T. Grant Co.* (1974), 416 U.S. 600, 619, 40 L. Ed. 2d 406, 420-21, 94 S. Ct. 1895, 1906.) Although it did not afford prior notice or hearing, the Louisiana statute: (1) required a judge to order the restraint or seizure; (2) required the plaintiff to make more than conclusory allegations of possessory rights; (3) required the plaintiff to post a bond to protect the defendant in the event the restraint was found to be unnecessary or wrongful; (4) afforded the defendant the opportunity to retrieve the property by posting its own bond; (5) applied only to creditors who had a current and real interest in the particular property sought to be frozen or seized; and, most importantly, (6) afforded the defendant the right to an immediate post-seizure hearing. (416 U.S. 600, 604-07, 40 L. Ed. 2d 406, 411-13, 94 S. Ct. 1895, 1898-1900.) The court did not hold that all of these factors, or any particular combination of them, are necessary to satisfy due process, so long as the procedure as a whole fairly accommodates the parties' respective interests. 416 U.S. 600, 610, 40 L. Ed. 2d 406, 415, 94 S. Ct. 1895, 1901.

Shortly after the *Mitchell* decision, the court struck down a Georgia statute which allowed the plaintiff to institute garnishment proceedings against the defendant, pending suit, effectively freezing the defendant's assets. (*North Georgia Finishing, Inc. v. Di-Chem, Inc.* (1975), 419 U.S. 601, 608, 42 L. Ed. 2d 751, 758, 95 S. Ct. 719, 723.) The *North Georgia* statute also afforded no preseizure notice or hearing, but it had only two of the "saving characteristics" the Louisiana statute had: it required the plaintiff to post a bond and allowed the defendant to dissolve the garnishment by filing its own bond. (419 U.S. 601, 603, 42 L. Ed. 2d 751, 755, 95 S. Ct. 719, 721.) While it additionally required the plaintiff to state that "he has reason to apprehend the loss" of property sought to be garnished (419 U.S. 601, 602 n.1, 42 L. Ed. 2d 751, 754 n.1, 95 S. Ct. 719, 720 n.1), the court characterized that language as conclusory (419 U.S. 601, 607, 42 L. Ed. 2d 751, 757-58, 95 S. Ct. 719, 722-23). It held that these protections were insufficient to satisfy the due process clause. 419 U.S. 601, 608, 42 L.Ed. 2d 751, 758, 95 S. Ct. 719, 723.

■■ Notwithstanding the fact that section 2—1402 is designed to

afford only post-judgment relief to successful plaintiffs (Ill. Rev. Stat. 1983, ch. 110, par. 2—1402(a)), if it in fact authorizes the judgment creditor to summarily restrain a third-party respondent from selling property in which it claims a vested proprietary interest, it also effectively affords a form of prejudgment relief (because it restrains the respondent prior to the trial required by the garnishment provisions (Ill. Rev. Stat. 1983, ch. 110, par. 12—711(a))), as did the statutes in *North Georgia* and *Mitchell*. Moreover, it purports to allow that restraint: (1) without prior notice or a hearing; (2) without the participation of a judge; (3) without requiring the creditor to make *any* factual allegations, much less conclusory ones, regarding the necessity for the restraint; (4) without requiring the judgment creditor to post a bond to protect the respondent; (5) without providing the respondent the opportunity to post its own bond to retrieve or release the property; and (6) without the judgment creditor's having any current proprietary interest in this particular property.

And while the garnishment provisions purport to afford the respondent an immediate hearing (Ill. Rev. Stat. 1983, ch. 110, par. 12—711(a)), that hearing is provided to resolve the parties' ultimate dispute—whether the property in fact belongs to the judgment debtor rather than the respondent. The *North Georgia* court did not consider the trial of the underlying suit to be the type of immediate post-deprivation hearing due process requires. (*North Georgia Finishing, Inc. v. Di-Chem, Inc.* (1975), 419 U.S. 601, 611, 42 L. Ed. 2d 751, 760, 95 S. Ct. 719, 724-25 (Powell, J., concurring). But see 419 U.S. 601, 619, 42 L. Ed. 2d 751, 765, 95 S. Ct. 719, 728-29 (Blackmun, J., dissenting).) In addition, the hearing provided here is subject to indefinite postponement for "good cause" (Ill. Rev. Stat. 1983, ch. 110, par. 12—711(a)), as was necessitated in this case by Aspen's requests to conduct extensive discovery. The Code therefore makes no provision for an immediate post-seizure hearing to review the necessity for the restraint. (See *North Georgia Finishing, Inc. v. Di-Chem, Inc.* (1975), 419 U.S. 601, 611, 42 L. Ed. 2d 751, 760, 95 S. Ct. 719, 724-25 (Powell, J., concurring); *Mitchell v. W. T. Grant Co.* (1974), 416 U.S. 600, 610, 40 L. Ed. 2d 406, 415, 94 S. Ct. 1895, 1901 (noting that the statute provides an immediate hearing *regarding possession*).) In short, if so interpreted, the statute permits a judgment creditor to summarily restrain a third-party respondent from selling property it claims as its own, pending a trial (Ill. Rev. Stat. 1983, ch. 110, par. 12—711), without affording it any procedural due process protections of any kind.

■■ ■ It is a court's duty to interpret a statute susceptible of

two constructions, one of which would render it unconstitutional, in such a manner as to uphold its constitutionality and validity. (See *People ex. rel Mathews v. Board of Education* (1932), 349 Ill. 390, 400; *Board of Commissioners v. County of Du Page* (1982), 107 Ill. App. 3d 409, 413.) We therefore must conclude that the legislature did not intend that a judgment creditor could, by instituting supplementary proceedings to discover assets of a judgment debtor, summarily restrain a third-party respondent from disposing of property it claims to own pending resolution of the parties' competing claims to the property. We conclude that where a third-party respondent brings its claim to the property to the attention of the trial court, the court must vacate the citation's restraining provision with respect to that property.

Here, the trial court's refusal to vacate the restraint with respect to the stock effectively prohibited Batavia, prior to a trial on the merits, from disposing of property claimed as, and found to be, its own. In substance, this was a preliminary injunction. See *Paddington Corp. v. Foremost Sales, Inc.* (1973), 13 Ill. App. 3d 170, 174 ("[a] preliminary injunction is the primary means of obtaining injunctive relief prior to trial on the merits"); see also *In re M.B.* (1985), 137 Ill. App. 3d 992, 998 (holding that "[c]ourts will look to the substance of an order, not to its form, in determining whether in fact it is an injunction").

While a trial court has the authority to enjoin a party from transferring property pending a trial, it may do so only where it would be appropriate in any pending action—where the plaintiff has established the existence of factors indicating the necessity for such extraordinary relief: (1) that plaintiff has a clearly ascertainable right which is in need of enforcement; (2) that plaintiff is likely to suffer irreparable harm without an injunction; (3) that plaintiff's remedies at law are inadequate; and (4) that plaintiff is likely to succeed on the merits. (See, *e. g., People ex rel. Hartigan v. Stianos* (1985), 131 Ill. App. 3d 575, 579; *Madigan Brothers, Inc. v. Melrose Shopping Center Co.* (1984), 130 Ill. App. 3d 149, 151; *G. A. Carney, Ltd. v. Brzeczek* (1983), 117 Ill. App. 3d 478.) In addition, a judgment creditor may obtain only that relief from a third-party citation respondent which the judgment debtor could have obtained. (See *Second New Haven Bank v. Kobrite, Inc.* (1980), 86 Ill. App. 3d 832, 835; *Marcheschi v. P. I. Corp.* (1980), 84 Ill. App. 3d 873, 879.) A debtor can get preliminary injunctive relief to prevent the sale of collateral only where he demonstrates that the resulting loss cannot be fully compensated by damages. See *Hutter v. Lake View Trust & Savings Bank* (1977), 54 Ill. App. 3d 653.

 Aspen established none of the requisite factors, and the record indicates that damages would have been entirely adequate. We therefore conclude that the trial court erred in applying the restraining provisions of the citation to the stock and abused its discretion in allowing that restraint to stand pending a trial. See *G. A. Carney, Ltd. v. Brzeczek* (1983), 117 Ill. App. 3d 478, 482 (order granting or refusing to grant a preliminary injunction will not be overturned absent an abuse of discretion).

This decision is not inconsistent with our decision in *Vendo Co. v. Stoner* (1982), 108 Ill. App. 3d 51. In *Vendo* we found a third-party citation respondent liable for a penalty under the predecessor of section 2—1402 (Ill. Rev. Stat. 1979, ch. 110, par. 73(4)(a)), where it failed to disclose that it held some treasury notes belonging to the judgment debtor as collateral and subsequently sold it at the debtor's request in violation of the citation's restraining provision. (*Vendo Co. v. Stoner* (1982), 108 Ill. App. 3d 51, 53.) The citation respondent in *Vendo* had not foreclosed on the collateral prior to the issuance of the citation, or thereafter, and therefore was never vested with an immediate proprietary right to sell it. Absent a default and foreclosure, the collateral remained the property of the judgment debtor and was properly subject to the restraining provision. Moreover, we did not hold that a citation respondent has no right to sell its collateral in the event of a default, but that a bad-faith failure to disclose a judgment debtor's property will result in the creditor/respondent's loss of its right to a setoff. 108 Ill. App. 3d 51, 58.

### III

 Batavia finally argues that, because Aspen effectively received a form of prejudgment injunctive relief against it, it is entitled to damages under Code section 11—110, which allows the assessment of damages on a court's dissolution of a temporary restraining order or preliminary injunction. (Ill. Rev. Stat. 1983, ch. 110, par. 11—110.) Aspen argues that our decision dismissing Batavia's first appeal (*Bank of Aspen v. Fox Cartage, Inc.* (1986), 141 Ill. Ap. 3d 369) conclusively established that there was no injunction issued in this case and that that ruling has become the law of the case.

The "law of the case" doctrine requires an appellate court to adhere to determinations of law made by it in a prior appeal of the same case. (See *PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 312; *Callier v. Callier* (1986), 142 Ill. App. 3d 407, 414.) However, the reviewing court is not foreclosed by the doctrine from deciding issues previously presented to, but not decided by, it. 142 Ill. App.

3d 407, 414; *Zokoych v. Spalding* (1980), 84 Ill. App. 3d 661, 667.

In *Bank of Aspen*, we dismissed the appeal and refused to consider the substantive issues raised by Batavia. In any case Batavia did not at that time raise the issue that its ownership interest in the property precluded injunctive-type relief. We concluded only that the supreme court did not intend to make a court's refusal to quash a section 2—1402 citation containing language prohibiting the respondent from disposing of the debtor's property in its possession an appealable interlocutory order. (*Bank of Aspen v. Fox Cartage, Inc.* (1986), 141 Ill. App. 3d 369, 373.) We still adhere to that view. After reviewing the substantive issues in this appeal, however, it is clear that the citation as applied here was beyond the scope of section 2—1402, because it restrained Batavia from disposing of property it claimed to, and did in fact, own. Our earlier decision did not address this issue, and the law of the case therefore does not apply. See *Lake Bluff Heating & Air Conditioning Supply, Inc. v. Harris Trust & Savings Bank* (1983), 117 Ill. App. 3d 284, 290.

As we have determined that the trial court effectively and erroneously issued a preliminary injunction, we conclude that Batavia is entitled to prove any resulting damages it incurred pursuant to section 11—110 of the Code (Ill. Rev. Stat. 1983, ch. 110, par. 11—110). (See also *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373 (finding assessment of damages under that provision constitutional).) We reject Aspen's contention that the trial court's failure to dissolve the injunction prior to deciding the merits of the case precluded a section 11—110 award. In *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1983), 94 Ill. 2d 535, our supreme court explained the prior dissolution requirement. As interpreted by case law, the Code requires the injured party to object to the procedure before a termination of the case on the merits by moving the trial court to dissolve it. It then must not waive the issue by failing to immediately appeal the court's denial of its motion, as such a waiver constitutes a final determination that the injunction was properly granted and becomes the law of the case. 94 Ill. 2d 535, 544.

In the instant case, Batavia objected immediately to the order. While the peculiar nature of supplementary proceedings prevented an interlocutory appeal to this court (*Bank of Aspen v. Fox Cartage, Inc.* (1986), 141 Ill. App. 3d 369), Batavia nevertheless attempted an appeal and therefore did not waive the issue. (See *Panduit Corp. v. All States Plastic Manufacturing Co.* (1980), 84 Ill. App. 3d 1144, 1150 ("[T]he key to the preservation of the question of damages *** lies in the timely filing in the trial court of a motion to dis-

solve the injunction").) Because damages may be assessed under section 11—110 after a favorable decision at the appellate level (84 Ill. App. 3d 1144, 1150), we conclude that damages are appropriate here. We therefore remand this case with directions to the trial court to allow Batavia to prove any damages it incurred as a result of the injunction.

Affirmed in part, reversed in part, and remanded.

LINDBERG, P.J., and REINHARD, J., concur.